IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NELLIE BOWMAN,            )
                          )
    Plaintiff,             )
                          )    CIVIL ACTION NO.
v.                        )
                          )    96-0448-P-C
COLEMAN COMPANY, INC., et al., )
                          )
    Defendants.            )

## REPORT AND RECOMMENDATION

Plaintiff Nellie Bowman ("Ms. Bowman") has filed a motion to remand this action to the Circuit Court of Mobile County, Alabama on the ground that removal was improvidently granted (tab 7). In a motion addressing the same substantive issues, defendant Michael Elkins ("Mr. Elkins") has moved for dismissal of all claims asserted against him by the plaintiffs (tab 3). These motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 26. After careful consideration of the arguments raised by the parties in their briefs and at oral argument, the Court recommends that the motion to remand be DENIED and the motion to dismiss be GRANTED for the reasons set forth below.

I. Factual Background[1]

On November 3, 1995, the plaintiff's son, Andrew Bowman ("Mr. Bowman"), purchased a Coleman PowerMate, 17,000 BTU, propane radiant heater, Model No. 5017-751T, at a Lowe's

---

[1] For the purposes of the motions being considered, the facts are construed in the light most favorable to the plaintiff. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) (in considering fraudulent joinder issue, questions of fact must be assessed in plaintiff's favor); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (in summary judgment context, court considers all inferences drawn from underlying facts in light most favorable to nonmovant).



retail store in Mobile, Alabama. Because he was dissatisfied with a similar heater which had not functioned properly, Mr. Bowman spoke with Mr. Elkins, the Lowe's store manager, about the possibility of exchanging his old heater for a new one. Mr. Elkins agreed to allow Mr. Bowman to exchange his malfunctioning heater for the Coleman heating unit which is the subject of this lawsuit. Prior to the sale of the new heater, Mr. Elkins allegedly advised Mr. Bowman that the Coleman unit was a good heater and that Mr. Bowman would not experience any problems with it. On February 3, 1996, the plaintiff sustained severe burns when the Coleman PowerMate heater which her son had purchased at Lowe's on Mr. Elkins' verbal endorsement allegedly malfunctioned.

On March 26, 1996, Ms. Bowman filed the instant lawsuit against defendants Coleman Company, Inc. ("Coleman"), Lowe's Home Centers, Inc. ("Lowe's"), and Mr. Elkins in the Circuit Court of Mobile County, Alabama. On May 10, 1996, the defendants removed this action to federal court pursuant to 28 U.S.C. §§ 1441 *et seq*. In their notice of removal, defendants indicated that federal subject matter jurisdiction was predicated on diversity of citizenship. The plaintiff now seeks remand of this action to state court on the ground that this Court lacks diversity jurisdiction. Defendant Mr. Elkins has also moved for dismissal of all causes of action raised against him. Pursuant to Rule 12(b), Fed.R.Civ.Pro., the Court is construing the motion to dismiss as a motion for summary judgment under Rule 56, Fed.R.Civ.Pro. Both motions have been thoroughly briefed, and oral argument was held before the undersigned on June 3, 1996.

II. Legal Analysis

   *A. Fraudulent Joinder of Defendant Mr. Elkins*

   The merits of plaintiff's motion to remand hinge on the presence or absence of complete

2

diversity of citizenship in this action. See 28 U.S.C. § 1332(a) (conferring upon federal district courts original jurisdiction over actions between citizens of different states where amount in controversy exceeds $50,000). It is well-established that diversity jurisdiction requires complete diversity of citizenship, such that no party on one side of a controversy may be a citizen of the same state as any party on the other side. See, e.g., Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1359 (11th Cir. 1996); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1557 (11th Cir. 1989). In the case at bar, it is undisputed that the plaintiff is a citizen of Alabama, while defendant Coleman is a Kansas corporation with its principal place of business in Kansas and defendant Lowe's is a North Carolina corporation with its principal place of business in North Carolina. Defendant Mr. Elkins is a citizen of Alabama. Despite the lack of diversity between the plaintiff and Mr. Elkins, the defendants removed this action on the ground that Mr. Elkins' citizenship should not be considered because he was fraudulently joined as a defendant.

The presence of a non-diverse party who has been fraudulently joined does not destroy a federal court's diversity jurisdiction over an action. See Tapscott, 77 F.3d at 1359; Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). A defendant is considered fraudulently joined if there is "no possibility the plaintiff can establish any cause of action against the resident defendant."[2] Cabalceta, 883 F.2d at 1561; Autrey v. United Companies Lending Corp., 872 F. Supp. 925, 929 (S.D. Ala. 1995). As the parties seeking removal, the defendants bear the burden of proving that there is no possibility that a state court would find the plaintiff's complaint to state

---

[2] A second avenue for establishing fraudulent joinder exists where the plaintiff has fraudulently pled jurisdictional facts in order to bring a resident defendant into state court. See Tapscott, 77 F.3d at 1360 n.17; Cabalceta, 883 F.2d at 1561. The defendants in this case have not alleged fraud in the pleading of jurisdictional facts; therefore, this means of establishing fraudulent joinder is not applicable here.

3

a cause of action against Mr. Elkins, and that Mr. Elkins' joinder in this matter was therefore fraudulent. See Cabalceta, 883 F.2d at 1561; Lane v. Champion International Corp., 827 F. Supp. 701, 707 (S.D. Ala. 1993) (declaring that removing party must establish fraudulent joinder by clear and convincing evidence). In ruling on this issue, the district court must assess all questions of fact and controlling law in favor of the plaintiff. See id.; Coker, 709 F.2d at 1440.

### 1. Plaintiff's Claims Under AEMLD

The first cause of action asserted against Mr. Elkins in the complaint is a claim under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). A plaintiff can invoke the AEMLD only as to manufacturers and sellers of allegedly defective products. See Turner v. Azalea Box Co., 508 So.2d 253, 254 (Ala. 1987). The Alabama Supreme Court recently summarized the criteria which a plaintiff must satisfy in order to maintain an AEMLD action against a seller of a product as follows:

> "To establish liability under the AEMLD, the plaintiff must show that he suffered an injury caused by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold." Carter v. Cantrell Machine Co., Inc., 662 So.2d 891, 892 (Ala. 1995) (citing Sapp v. Beech Aircraft Corp., 564 So.2d 418 (Ala. 1990)).

An obvious threshold inquiry to a finding of AEMLD liability is a determination of whether a particular defendant may be labeled a "seller" of a product. The defendants argue vigorously that Mr. Elkins cannot properly be deemed a seller of the Coleman heater purchased by Mr. Bowman. Because Mr. Elkins was an employee of Lowe's, defendants contend, he was merely an agent of the seller and therefore cannot be liable under the AEMLD. In response, the plaintiff asserts that it is incongruous at best for the defendants to contend that Mr. Elkins, a

4

salesperson by trade, should not be considered a seller under the AEMLD.

Alabama courts have not addressed the question of whether a retail store employee may properly be considered as seller of a product, for AEMLD purposes.[3] However, several other jurisdictions have faced similar questions in analogous circumstances. For example, in Memphis Bank & Trust Co. v. Water Services, Inc., 758 S.W.2d 525 (Tenn. 1988), the Tennessee Supreme Court examined whether a salesman for a manufacturer of a water treatment device could be deemed a "seller" or a "manufacturer" for products liability purposes. In that case, the court set aside a judgment against the salesman, pursuant to the following findings:

> "[The individual defendant] is shown by the uncontradicted evidence in this case to be a sales representative of the corporate defendant. On all sales made for his employer he was paid a commission. He was neither a stockholder, a director nor an officer of the corporate defendant, insofar as the record shows. The corporation is clearly both a 'manufacturer' and a 'seller' . . . . [The individual defendant] was neither." Id. at 526.

Likewise, in Musser v. Vilsmeier Auction Co., 562 A.2d 279 (Pa. 1989), the Pennsylvania Supreme Court held that an auctioneer is not a "seller" for the purposes of establishing products liability. In support of this decision, that court reasoned that the auctioneer was simply "the means of marketing" the product, and that he was "not equipped to pass upon the quality of the myriad [] products he is called upon to auction". Id. at 282; see also Tauber-Arons Auctioneers Co., Inc. v. Superior Court for County of Los Angeles, 161 Cal.Rptr. 789, 798 (Cal.App.2 Dist. 1980) (finding that auctioneer cannot be liable under strict products liability where auctioneer is a marketer who played "no more than a random and accidental role" in the distribution of a

---

[3]At oral argument, the plaintiff directed the Court's attention to Caudle v. Partridge, 566 So.2d 244 (Ala. 1990), in which an individual seller was held liable under the AEMLD. However, the individual's liability in Caudle was predicated on his status as a sole proprietor, not as a salesman; therefore, the Caudle decision is inapposite.

defective product). More importantly, the Musser court observed that:

> "Sellers may sell in any fashion they choose: sky writing, signs, handbills, electronic media or any method to suit their purpose, including auction. When they do they remain liable and the agents of their method are but agents and extensions of their enterprise [and are not liable]." Musser, 562 A.2d at 283.

Though cases like Memphis Bank and Musser originate in and apply the law of other jurisdictions, they strongly suggest that Mr. Elkins cannot be considered a "seller" under AEMLD.[4]

More generally, the applicable case law is clear that the policy aims of strict products liability for sellers would not be furthered by sweeping individuals such as Mr. Elkins within the doctrine's ambit. Indeed, in creating the AEMLD, Alabama's high court explained its intention to place "the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins v. American Motors Corp., 335 So.2d 134, 139 (Ala. 1976). This rationale is consistent with the policy justifications articulated by numerous other state courts for expanding products liability to embrace all entities within the distributive chain of a defective product. For example, in Nutting v. Ford Motor Company, 584 N.Y.S.2d 653, 657 (N.Y.A.D.3 Dept. 1992), a New York court observed that the policy considerations for seller liability included the following:

> "[T]he ability of the seller, because of its continuing relationship with the manufacturer, to exert pressure for the improved safety of products and to recover

---

[4] This view is further bolstered by the fact that numerous jurisdictions have held that liability in a products liability case should extend only to those in the distributive chain through which products travel in order to reach the market. See, e.g., Parker v. St. Vincent Hospital, 919 P.2d 1104 (N.M. App. 1996); Dunn v. Kanahwa County Board of Education, 459 S.E.2d 151 (W.Va. 1995); Daly v. General Motors Corp., 575 P.2d 1162, 1170 (Cal. 1978); Embs v. Pepsi-Cola Bottling Co. of Lexington, Kentucky, Inc., 528 S.W.2d 703, 705 (Ky. 1975); Allison Steel Mfg. Co. v. Superior Court of Maricopa County, Division Three, 511 P.2d 198, 202 (Ariz.App. 1973). While a salesman may be an agent of an entity in the distributive chain, the salesman himself is not a part of such a chain.

increased costs within their commercial dealings, or through contribution or indemnification in litigation; additionally, by marketing the products as a regular part of their business such sellers may be said to have assumed a special responsibility to the public, which has come to expect them to stand behind their goods." Id. at 657 (quoting Sukljian v. Charles Ross & Son Co., 503 N.E.2d 1358 (N.Y. 1986)); see also Crowe v. Public Building Commission of Chicago, 370 N.E.2d 32, 34 (Ill.App. 1 Dist. 1977) (supplier liability for defective products is driven by general considerations of justice which dictate that those who create the risk and reap the profit should also bear the loss); Kasel v. Remington Arms Co., 101 Cal. Rptr. 314, 323 (Cal.App. 2 Dist. 1972) (sellers are held liable because they have participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance on the product).

Mr. Elkins is an employee of a corporate defendant. In his position as store manager, he has no authority to compel or prevent the distribution of particular products by Lowe's, for such product distribution decisions are vested in the Lowe's home office, rather than in its individual store managers. See Elkins Deposition, at 34-35, 74. While Lowe's likely has accumulated sufficient market power to exert pressure on manufacturers to improve the safety of their products, Elkins has not. Likewise, it is Lowe's, and not Mr. Elkins, who reaps the profit from the distribution of products such as the Coleman heater; therefore, it is Lowe's, and not Mr. Elkins, who should be required to bear the risk of such products being defective.[5] Finally, Lowe's has a participatory market connection with Coleman, through which avenue Lowe's may be able to recoup the increased costs which it incurs as a result of seller liability. Mr. Elkins does not. In short, the policy goals underlying the AEMLD would not be advanced in any way by holding

---

[5]Mr. Elkins is a salaried employee of Lowe's. See Elkins Deposition, at 12. Although Lowe's does have an employee bonus program based, in part, on store profits, there is no evidence that this program would allow Mr. Elkins to reap any appreciable share of Lowe's profits earned from the distribution of defective products. The Court is of the opinion that a simple employee bonus plan, without more, is insufficient to activate the policy considerations of aligning profits and risks which underlie seller liability in the AEMLD context.

7

persons such as Mr. Elkins liable in their role as store managers or sales representatives.

In light of the foregoing analysis, the Court believes that neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass salespersons, store managers, or other agents of a retailer. Accordingly, the undersigned is of the opinion that there is no possibility that Ms. Bowman could successfully assert her AEMLD claim against Mr. Elkins in state court.

### 2. Plaintiff's Negligence/Wantonness Claims

The remaining causes of action advanced against Mr. Elkins in the complaint are negligence and wantonness claims. In particular, the plaintiffs allege that the store manager's actions were negligent and wanton inasmuch as he knew or should have known that the Coleman heater sold to Mr. Bowman was unsafe.[6] Defendants contend that there is no possibility that Ms. Bowman could assert these causes of action against Mr. Elkins in state court.

To recover in a negligence or wantonness action, a plaintiff must establish the following elements: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach."[7] Kelly v. M. Trigg Enterprises, Inc., 605 So.2d

---

[6] According to the plaintiff, Mr. Elkins knew or should have known the heating unit was unsafe because it lacked a regulator and because there was no indication on its container that it had been approved by any independent testing laboratory.

[7] The criteria listed here are shared by both negligence and wantonness actions. In addition to those elements listed above, a party seeking to recover on a wantonness theory must also show that the defendant's omission of a duty was done with knowledge and consciousness of the likelihood of injury which would result from such an omission. See Lynn Strickland Sales and Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145 (Ala. 1987) (wantonness characterized by state of mind in which duty was omitted); Tyler v. City of Enterprise, 577 So.2d 876, 877 (Ala. 1991) (both negligence and wantonness claims require showing that defendant owed duty).

8

1185, 1190 (Ala. 1992) (quoting Hall v. Thomas, 564 So.2d 936, 937 (Ala. 1990)). Defendants argue that the plaintiff's negligence and wantonness claims against Mr. Elkins must fail because he owed her no duty of care. See Ledbetter v. United American Ins. Co., 624 So.2d 1371, 1373 (Ala. 1993) (whether there is duty is threshold inquiry in negligence case). In response, the plaintiff articulates three separate duties which Mr. Elkins allegedly owed to her: (1) a duty to prevent an unsafe product from entering the stream of commerce; (2) a duty to warn of the dangerous nature of a product; and (3) a duty to be careful not to hurt others.

With respect to the first alleged duty, it is clear that Mr. Elkins lacked the authority from Lowe's to prevent the Coleman heater from entering the stream of commerce. As stated above, Lowe's, and not Mr. Elkins, was responsible for deciding which products to distribute at the Mobile store. Plaintiff cites no authority for the proposition that a salesman or store manager owes customers a duty to prevent unsafe products from entering the stream of commerce.[8] Moreover, the recognition of such a duty would impose strict products liability on persons such as Mr. Elkins based on an employer's decision to market a certain product. As a practical matter, this rule would result in salespeople with no control over product marketing or distribution decisions being declared negligent for those decisions. Under Alabama law, "the duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that it do or refrain from doing some act for the safety and well-being of the plaintiff." Buchanan v. Merger Enterprises, Inc., 463 So.2d 121, 125-26 (Ala. 1984). Clearly, no public policy interest would be advanced by holding a salesperson liable in negligence for a corporate

---

[8] By the time the products reach the salesman, they have already entered the stream of commerce. The salesman simply acts as a marketing medium, an agent of his employer, in disseminating the goods.

9

decision into which he had no input and over which he had no control. The undersigned is of the opinion that Mr. Elkins owed Mr. Bowman no duty to prevent harmful products from entering the stream of commerce.

Second, the plaintiff asserts that Mr. Elkins owed her a duty to warn of the dangerous nature of the product. In support of this argument, Ms. Bowman cites Caudle v. Partridge, 566 So.2d 244, 247 (Ala. 1990), in which the Alabama high court stated that manufacturers and sellers have a duty to warn the public about products which they know or should know to be dangerous. See id. As indicated previously, Mr. Elkins is neither a seller nor a manufacturer; therefore, the Caudle decision does not impose any such duty to warn on him.[9]

Third and finally, Ms. Bowman invokes the general duty imposed by Alabama law on all persons to be careful not to hurt others. See Smitherman v. McCafferty, 622 So.2d 322, 324 (Ala. 1993); Southeastern Greyhound Lines v. Callahan, 13 So.2d 660, 663 (Ala. 1943). While Alabama courts do recognize such a general duty, they also state that the determination of whether this duty exists in a particular context should be based on the consideration of "a number of factors, including public policy, social considerations, and foreseeability." Smitherman, 622 So.2d at 324. For the reasons outlined previously, neither public policies nor social

---

[9]It is true that an individual may voluntarily shoulder a duty to inspect a product, in which case a duty to warn would arise. See Adams v. Travelers Insurance Co., 494 So.2d 401, 403-04 (Ala. 1986). However, the uncontroverted evidence is that Mr. Elkins undertook no such voluntary duty and, indeed, lacked the training and expertise to perform inspections of Lowe's products. See Elkins Deposition, at 15-16, 33-34, 75-76. As a result, Adams cannot serve as a basis for finding that Mr. Elkins owed Mr. Bowman a duty to warn about the unsafe nature of the Coleman heater which he purchased. Accord Cook v. Safeway Stores, Inc., 330 P.2d 375, 376 (Okla. 1958) (store clerk owes duty to supply customers wholesome food only where clerk has knowledge of unfitness or assumes duty to inspect food); Crosby v. Calaway, 16 S.E.2d 155, 159 (Ga.App. 1941) (same).

10

considerations would be furthered by the imposition of a duty of care on Mr. Elkins in this case. Moreover, the undersigned is of the opinion that the dangerous nature of the heater was not foreseeable to Mr. Elkins, who did not possess the training, expertise, background, or responsibility to inspect or test products such as the Coleman heater for defects. Therefore, the undersigned is of the opinion that no general duty of care is applicable in this case.

As this analysis demonstrates, it is evident that Mr. Elkins owed Ms. Bowman no duty which could give rise to personal liability on a negligence or wantonness theory. Hence, the undersigned believes that there is no possibility that the plaintiff could maintain such negligence or wantonness claims in state court. Given the Magistrate Judge's previous recommendations with respect to the AEMLD claims, the undersigned is of the opinion that the plaintiff fraudulently joined Mr. Elkins in this action, as there is no possibility that she could successfully interpose any of her claims against him in state court. Because Mr. Elkins has been fraudulently joined, his citizenship is immaterial for the purposes of evaluating the presence or absence of diversity jurisdiction in federal court. Complete diversity exists among the remaining parties. It is therefore the recommendation of the undersigned that the plaintiff's motion to remand be DENIED on the ground that there is complete diversity of citizenship among all parties properly joined and served in this litigation and that federal jurisdiction properly lies.

*B. Mr. Elkins' Motion to Dismiss*

By order dated July 11, 1996, this Court advised the parties that it would construe Mr. Elkins' motion to dismiss as a motion for summary judgment. The undersigned is of the opinion that the foregoing recommendation on the fraudulent joinder issue effectively disposes of the summary judgment issue, as well. Indeed, the undersigned has already determined that there is no

11

possibility that the plaintiff could pursue any of her state law claims against Mr. Elkins in state court. There being no possibility of relief, it necessarily follows that there can be no genuine issue of material fact with respect to any of plaintiff's claims against Mr. Elkins. Therefore, the Magistrate Judge believes that Mr. Elkins is entitled to judgment as a matter of law with respect to all of those claims, pursuant to Rule 56(c), Fed.R.Civ.Pro. Accordingly, the undersigned recommends that Mr. Elkins' motion for dismiss, which was treated as a motion for summary judgment, be GRANTED and that the claims against him be DISMISSED with prejudice.

III. Conclusion

For all of the foregoing reasons, the undersigned recommends that the plaintiff's motion to remand this action to the Circuit Court of Mobile County, Alabama, be DENIED, and that defendant Elkins' motion to dismiss be GRANTED and the claims asserted against him be DISMISSED with prejudice.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 3rd day of September, 1996.

WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. <u>Objection</u>. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a <u>de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(<u>en banc</u>). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in Local Rule 26(4)(b), which provides that:

> Any party may object to a magistrate judge's proposed findings, recommendations or report made under 28 U.S.C. § 636(b)(1)(B) within ten (10) days after being served with a copy thereof. The appellant shall file with the Clerk, and <u>serve on the magistrate judge</u> and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. A judge shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his discretion or where required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A Magistrate Judge's recommendation cannot be appealed to a Court of Appeals; only the District Judge's order or judgment can be appealed.

2. <u>Transcript (applicable where Proceedings Tape Recorded)</u>. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

UNITED STATES MAGISTRATE JUDGE