
PLAINTIFF'S EXHIBIT

FILED
2005 JUN-24 AM 9:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

2004 WL 1059811 (N.D.Miss.)
Not Reported in F.Supp.2d
N.D.Miss.,2004.
Apr 22, 2004

United States District Court,
N.D. Mississippi, Western Division.
Pleas Ozell ROSAMOND, et al Plaintiffs
v.
GARLOCK SEALING TECHNOLOGIES, INC. et al Defendants
No. 3:03 CV 235.
April 22, 2004.

William H. Liston, Liston/Lancaster, Winona, MS, Grady F. Tollison, Jr., Tollison Law Firm, P.A., Oxford, MS, Sheila Jo Hendricks, Campbell Cherry Harrison Davis Dove, Jackson, MS, for plaintiffs.
Thomas W. Tyner, Aultman, Tyner, Mcneese & Ruffin, Hattiesburg, MS, Thomas Gerry Bufkin, Lawrence M. Coco, Baker, Donelson, Bearman & Caldwell, David W. Dogan, III, Dogan & Wilkinson, Pllc, Edward J. Currie, Jr., Currie, Johnson, Griffin, Gaines & Myers, Barry Clayton Campbell, Baker, Donelson, Bearman & Caldwell, Craig E. Brasfield, T. Hunt Cole, Jr., Thomas W. Tardy, III, Marcy Leigh Bryan, Forman, Perry, Watkins, Krutz & Tardy, Pllc, Jackson, MS, John Berlyn Edwards, II, Dogan & Wilkinson, Pllc, Pascagoula, MS, Charles Michael Evert, Jr., Evert & Weathersby, LLC, Atlanta, GA, Lucien C. Gwin, Jr., Gwin, Lewis & Punches, Natchez, MS, Carey R. Varnado, Montague, Pittman & Varnado, Hattiesburg, MS, Andrea La'Verne Edney, Brunini, Grantham, Grower & Hewes, James P. Streetman, III, Clark, Scott & Streetman, Jackson, MS, Elizabeth Christine Harper, Frilot Partridge Kohnke & Clements, New Orleans, LA, William C. Reeves, Smith Reeves & Yarborough, Pllc, Jackson, MS, Walter W. Dukes, Dukes, Dukes, Keating and Faneca, P.A., Gulfport, MS, Michael E. Whitehead, Page, Mannino, Pereisch, Dickinson & McDermott, P.L.L.C., Biloxi, MS, Jeffrey P. Hubbard, Wells, Moore, Simmons & Neeld, William F. Goodman, III, Watkins & Eager, Jackson, MS, S. Beth Windham, Jude & Associates, Hattiesburg, MS, Ronald G. Peresich, Page, Mannino, Pereisch, Dickinson & Mcdermott, P.L.L.C., Biloxi, MS, Michael Whitehead, Michael Whitehead, Attorney, Lee's Summit, MO, Kimberly Paige Wallace, Barfield & Associates, David Luke Trewolla, Dogan & Wilkinson, Pllc, Jackson, MS, for defendants.

*ORDER*

MILLS, J.
*1 This cause comes before the court on the motion [99-1] of defendants Ford Motor Company (Ford) and DaimlerChrysler Corporation (Chrysler) to recuse or to reconsider its ruling remanding this case. The court concludes that the motion is not well taken and should be denied.
I. Request for recusal
Defendants initially request, at this late date, that this court recuse itself from hearing the motion to reconsider based upon an alleged bias against defendants in asbestos removals. This request is not well taken. Defendants presumably seek for another judge to be appointed to "reconsider" a ruling which that judge did not make. This result strikes this court as absurd. This court is the only court which might "reconsider" its own ruling, and the court sees no reason to treat this motion to reconsider differently than any other motion to reconsider.
It is ironic that defendants would accuse this court of bias in this case. Indeed, prior to the court's ruling, it is the plaintiffs who had expressed frustration, bordering on exasperation, with the court's repeated refusal to expedite consideration of their motion to remand. Plaintiffs filed, and this court denied, similar motions to expedite in another companion asbestos case which also involved the same defense and plaintiffs' counsel as the instant case. See, e.g. *Covington, et al. v. Garlock, et al.*, No. 3:03cv236. In this case, the court denied plaintiffs' request for a "hearing on an urgent or necessitous matter," writing as follows:
In their motion, plaintiffs argue once again that this case will likely be transferred to a multi-district litigation (MDL) court in the near future and that, on this basis, this court should rule expeditiously on their motion to remand. While there are, no doubt, circumstances which may require this court to consider motions on an expedited basis, the court does not view the potential transfer of a case to an MDL court as constituting such a basis. The court has before it a number of motions which were filed prior to the motion to remand filed in this case, and it is the policy of this court to treat the motions before it equally with no

priority given based upon the litigation preferences of a particular party. Plaintiffs argue that the MDL process is deficient in a number of respects, but any delays which are present in this system should be addressed to the court handling a particular MDL matter, rather than to this court. Plaintiffs have previously moved for expedited consideration in this case, and this court has already denied this motion. The court trusts that no additional such motions will be forthcoming.

Based upon the tone of their submissions in this case and in *Covington*, it seems clear that plaintiffs felt that this court was improperly favoring the asbestos defendants with its rulings. For this reason, the court deems it particularly curious that defendants would accuse this court of bias against asbestos defendants.

*2 The reality of the matter is that this court favors neither plaintiffs nor defendants in asbestos cases (or in any other cases), and its rulings in asbestos cases reveal an entirely consistent logic. This court has resisted, and will continue to resist, attempts by any party to either expedite or delay this court's consideration of cases before it based upon their own litigation preferences. The court would note that a companion asbestos case was, in fact, transferred to an MDL court prior to the court's ruling on the motion to remand, *see Shapley v. Minnesota Mining & Manufacturing Co., et al.* No. 4:03 cv391. The court has manifestly made no efforts to reach any particular result in its asbestos cases, or any other cases, nor will this court be intimidated by counsel with threats of appeal or groundless motions to recuse.

Even a cursory review of this court's rulings reveals that the court's handling of this and other asbestos cases has been consistent and even-handed, with no preference shown to either plaintiffs or defendants. Moreover, the court's rulings on the specificity of the complaint and misjoinder issues merely reflect legal conclusions previously reached by this court in other, non-asbestos cases. [FN1] In addition, the court's analysis regarding both of these central issues was very similar to that of Judge Davidson in his opinion granting remand in another recent asbestos case, *see Winters, et al v. Minnesota Mining and Manufacturing, et al.*, No. 4:02cv295 (N.D.Miss.2003), and it seems clear from *Winters* that Judge Davidson would have reached the same result in this case.

FN1. This court's analysis of the specificity of the complaint issues in this case was almost identical to that set forth by this court in a prior, non-asbestos removal, *see Sanders v. Searle*, No. 203cv139 (N.D.Miss. Jan. 21, 2004), and the court's analysis of misjoinder issues was virtually identical to that set forth by this court in *Graham v. AIG, et al.*, No. 2:03cv63 (N.D.Miss. March 15, 2004), another non-asbestos removal.

In this case and in *Covington*, this court not only denied plaintiffs' motions to expedite but also granted defendants additional time to conduct discovery above and beyond the sixty days which this court customarily grants defendants to conduct remand-related discovery. In its order granting additional time in *Covington*, this court specifically chastised plaintiffs for not timely responding to defendants' discovery requests. It is not an exaggeration to state that this court bent over backwards to permit defendants to attempt to prove their jurisdictional arguments in this case before finally accepting as accurate plaintiffs' repeated protestations that defendants were more interested in creating delay than in securing a ruling on their removal arguments. While this court eventually concluded that no amount of discovery would permit defendants to prevail on their removal arguments, the court's rulings demonstrate unequivocally that this court neither prejudged its asbestos removals nor favored plaintiffs in its rulings.

In alleging bias, defendants point to certain observations made by this court regarding the current state of asbestos removal litigation in this state. In particular, this court noted that "asbestos removal litigation, as it has developed in this state, generally has less to do with effecting valid removals than with attempting to obtain a transfer of the case to a multi-district litigation (MDL) court, where the case generally languishes for a protracted period of time." This court also noted that "other district courts in this state will sometimes include language admonishing asbestos defendants against filing subsequent removal petitions, under the pain of contempt or other sanctions." This court specifically cited one such order by Judge Gex stating that the "continuous frivolous removal of these cases in addition to being burdensome to the plaintiffs has become taxing on the resources of the court and the court family" and noting that "[a]ny further attempt to remove this or similar lawsuits on the same basis by any party will be viewed as contempt and dealt with accordingly." *Knotts, et al. v. Minnesota Manufacturing, et al.*, No. 1:03cv125 (S.D.Miss.2003). The court's observations in this case were mild compared to those of Judge Gex in *Knotts*, and it is unclear to this court whether Judge Gex was faced with accusations of bias following its admonition in that case (which admonition was repeated verbatim in subsequent cases).

*3 It should also be noted that defendants would have established no right to recusal even if the allegations in their motion were true, which they most emphatically are not. Pursuant to 28 U.S.C. § 455 (2000), a party

may request the recusal of a judge not only if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," id. § 455(b)(1), but also when "his impartiality might reasonably be questioned." Andrade v. Chojnacki, 338 F.3d 448, 454 (5th Cir.2003). The Fifth Circuit in Andrade noted that, in Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the United States Supreme Court applied a common-law doctrine called the "extrajudicial source rule" to the interpretation of § 455, noting as follows:

First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Id. at 555, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (internal citations and footnotes omitted).

The Fifth Circuit has noted that any analysis of recusal issues "should entail a careful consideration of context, that is, the entire course of judicial proceedings" Andrade, 338 F.3d at 455, and the entire record in this court's asbestos cases reveals that it was quite even-handed in its rulings. Indeed, this court succeeded in frustrating both plaintiffs' and defense counsel at various stages of its asbestos removals, a fact which clearly suggests that this court made no effort to favor any party. Moreover, it is abundantly clear that any preference which this court ultimately showed for the position of plaintiffs was based solely upon the persuasiveness of their legal arguments and upon the nature of the litigation practices which the court had observed before it. These observations clearly have a "judicial source" within the meaning of Liteky, and could not serve as a basis for recusal, even if defendants' allegations were true, which, to reiterate, they are not.

*4 The court's observations in this case can not even remotely be compared to the extreme agitation and animosity expressed by some district judges when confronted with dilatory asbestos removal tactics. In In re Daimler Chrysler Corp., 294 F.3d 697, 701 n. 1 (5th Cir.2002), for example, the Fifth Circuit quoted a Texas district court as follows regarding the dilatory tactics of Ford and Chrysler in that case:

It is obvious to this court that Defendants-Petitioners are utilizing their vast and potentially endless resources to manipulate the federal court system in an arrogant and remarkably callous attempt to delay these asbestosis lawsuits for as long as the courts will possibly allow ... [T]he Automobile Manufacturers have relentlessly employed the most manipulative and craven approach to litigation that this Court has ever witnessed. Drawing upon their enormous coffers, the Antomobile Manufacturers have hired an elite force of lawyers, whose primary purpose appears to be dilatory, and who appear to believe that they can contravene the lucid mandates of the Fifth Circuit, and any other court for that matter, without any repercussions.... Through their innumerable baseless appeals, request for stays and rehearings, and potitions for writ of mandamus, the Automobile Manufacturers have demonstrated their insufferable and insolent belief that they can utilize their interminable financial resources to employ a slew of dilatory tactics that will both physically and financially eviscerate Plaintiffs' lawsuits, and so severely drain the federal courts' resources as to coerce every federal judge in this country into kowtowing to their demands. If the Plaintiffs' bar attempted such obvious, heavy-handed and brazen tactics, they would be excoriated for forum shopping, judicial intimidation, and abuse of the legal system. Yet the well-heeled minions of the massive automobile manufacturers are certain they can act with such utter hubris, certain of impunity.

Id. This court is astonished that defendants have sought to compare the court's ruling in this case with that of the district court in In Re DaimlerChrysler. Aside from the extreme animosity expressed in that case, the district court in DaimlerChrysler was found to have disregarded Fifth Circuit precedent which unequivocally dictated that the case not be remanded. DaimlerChrsler, 294 F.3d at 700. In its asbestos cases, this court relied upon Fifth Circuit precedent that dictated that the cases be remanded, and this court favored defendants in most of its pre-remand rulings. Moreover, to reiterate, the court made essentially the same holding as Judge Davidson in Winters. In addition, the court specifically noted in its rulings that "the desire of defendants to reach the comparative safety of an MDL court is understandable," and the court took care to state its view that defendants were seeking to delay resolution of remand issues pending MDL transfer in measured and

nonhostile terms.

*5 The court's observations regarding the difficulty of defendants' prevailing in asbestos removals were based expressly upon the fact that plaintiffs are generally successful in naming not one, but several, Mississippi retailers and/or manufacturers of products containing asbestos. Mississippi law permits retailers to be sued for products defects without a showing of fault, see Miss.Code Ann. § 11-1-63, and defendants concede that claims against other, non-retailer defendants are likewise "well known to Mississippi jurisprudence." The court's statements regarding the lack of merit of "most" asbestos removal petitions was clearly made in the context of a discussion of such difficulties, and this court takes exception with defendants' attempts to misstate the court's accurate statement as an expression of bias. [FN2] It is not a statement of bias to recognize legal difficulties which manifestly exist with regard to any particular variety of removal.

FN2. In addition, defendants completely misstate this court's observation that "[w]hile the desire of defendants to reach the comparative safety of an MDL court is understandable, their repeated efforts to do so, regardless of the jurisdictional merits, has resulted in an air of skepticism among the federal courts regarding the validity of most asbestos removals." Based upon this statement, defendants argue that this court has stated that "it views this, as well as all other asbestos-related removals, 'regardless of their jurisdictional merits' with an 'air of skepticism.'" This is quite clearly not what this court stated in its ruling. Rather, the court indicated that many asbestos defendants will remove cases in the hopes of securing an MDL transfer, regardless of whether they have a valid jurisdictional basis for doing so. The court also indicated that many courts in this state view "most" asbestos removals with skepticism, not that this court views "all" such removals with skepticism. The fact that the court does not view "all" asbestos removals with skepticism is evidenced by the court's pre-remand rulings favoring defendants. It was only after the court scrutinized defendants' removal arguments in this case that it became skeptical regarding their merit.

Moreover, any disapproval which this court expressed regarding the litigation tactics in many asbestos removals lies in the fact that the court has repeatedly observed that defendants will attempt to delay any consideration of the merits of the removal until a transfer of the case to an MDL court. The court's decision to voice any disapproval in this case was also based upon what the court considered to be blatantly contradictory arguments by Ford and Chrysler regarding the amount in controversy issue in different asbestos cases, which caused the court to question whether these arguments were being made in good faith. These arguments are discussed in greater detail in the reconsideration portion of this order. A review of the defendants' filings in this case reveal, beyond question, that their primary strategy in this and several companion cases (also involving the same defense counsel and virtually identical removal petitions) was to postpone any ruling on the motion to remand until after the case had been transferred to an MDL court. After removal, defendants immediately sought transfer to an MDL court, and they sought stays and/or extensions of time which, if granted, would have precluded any ruling on the motion to remand until the case was transferred to the MDL court. The record permits no serious dispute of this fact.

Plaintiffs note that any ruling on a motion to remand by the overburdened MDL court often takes years, thus preventing plaintiffs from even having their jurisdictional arguments heard for a very lengthy period of time. Defendants did not dispute the assertion of plaintiffs' counsel that, in prior asbestos removal cases tried by such counsel, five of the cases had been remanded while one had been transferred to an MDL court prior to any ruling on the motion to remand. Counsel for plaintiffs noted that no ruling on that pending motion to remand has been made by the MDL court for three years, and the court has no reason to doubt that this assertion is correct. While the court has declined to expedite consideration of its asbestos cases based upon potential prejudice to plaintiffs (resulting, as noted previously, in the transfer of at least one asbestos case to an MDL court), the court similarly sees no reason why it should ignore obvious attempts by defendants to delay this and other cases for a sufficient period of time to permit transfer to an MDL court.

*6 To reiterate, it is understandable that defendants should wish to secure transfer to an MDL court, and the court harbors absolutely no ill will towards defendants or their counsel for attempting to do so. At the same time, this court has a responsibility to ensure that all parties before it are treated fairly, and the court would not be serving the interests of justice by simply ignoring the "game" which is quite obviously being played in many, if not most, of the asbestos removals which come before it. The court would also note that it would likely never have made any observations regarding the current state of asbestos removals except for the fact that it deemed it necessary to warn defendants (in particular, as discussed *infra*, Ford and Chrysler) against

any subsequent removals of this same case without a proper basis for doing so. This court does not ordinarily warn against subsequent removals in its remand orders, and the court wished to explain why it was doing so in this case. The aggressiveness with which Ford and Chrsyler litigated the instant removal led this court to strongly suspect that, barring some warning, this would not be the final appearance of this case in federal court.

It would have been a simple matter for this court to simply do nothing and permit this case, which had already been conditionally transferred to the MDL court, to be finally transferred to that court. This court's decision to take a closer look at the stated bases for removal in this case was based largely upon a letter to this court from the MDL court, noting the conditional transfer of one of the court's asbestos cases and encouraging this court to rule upon any pending motions before it, in particular any motion to remand. Upon receiving this letter, the court scrutinized the stated bases for removal and concluded that no amount of discovery would permit defendants to prevail on their arguments herein. The fact that the MDL court specifically encouraged this court to rule upon the motion to remand also highlighted the fact that defendants' repeated efforts to delay resolution of this case ran counter to the MDL court's stated desire that, where possible, the transferor district court rule upon any motions to remand.

The court would emphasize that it does not view defendants' removal arguments as frivolous. To the contrary, the court found defendants' specificity of the complaint arguments to be unpersuasive, but not frivolous, and their misjoinder arguments fail in light of Mississippi's liberal joinder rules, but are not frivolous. [FN3] The court did harbor serious doubts regarding the good faith of defendants' amount in controversy arguments, as discussed *infra*. Regardless, it was not primarily the initial removal of this case, nor the arguments raised in support thereof, which gave this court concern, but rather the fact that defendants so obviously did not seek any ruling at all on the merits of their jurisdictional arguments. The simple fact that defendants filed a removal petition should not entitle them to a delay of years before the merits of the removal are even considered, but this was precisely the result which defendants sought to obtain in this case and in several companion cases. If the court is considered to have demonstrated bias for merely stating the truth, then it makes no apologies for having done so.

FN3. The court would also note that the Mississippi Supreme Court has amended Mississippi's Rule 20 in such a manner as to make any misjoinder arguments in this context far stronger in cases filed after the date of amendment. In addition, the Mississippi legislature is presently considering retailer immunity provisions which, if passed, may well serve to federalize most asbestos cases in this state. As such, it appears that asbestos defendants may well have far more persuasive arguments in support of federal jurisdiction in future cases. Even as the law currently exists, however, the court has no doubt but that many asbestos removals are, in fact, valid. Even if those removals only constitute a minority of asbestos removals, the court accepts its duty to diligently analyze whether any valid jurisdictional bases exist in any case before it and has always done so.

*7 In their motion, defendants note their intention to seek mandamus relief based upon this court's having made the aforementioned observations regarding asbestos removals. Defendants apparently take issue with the right of Article III federal judges to make candid observations regarding what they sincerely view to be dilatory practices in their own courtrooms. Compared to the previously referenced comments of other federal courts on this issue, this court's observations in this case were extremely mild, and this court has no stake whatsoever in the issue of asbestos removals. Indeed, the very notion that this court might have some motive to inherently disfavor asbestos removals over any other kind of removal strikes this court as preposterous.

Curiously absent in defendants' motion is any acknowledgment of a possible role by asbestos defendants themselves in causing district courts to repeatedly make comments regarding their dilatory practices in asbestos removals. Defendants apparently do not concede the possibility that there is no conspiracy of bias among federal courts against asbestos removals, but rather a simple desire that dilatory tactics not be allowed to prevail in their courtrooms. This court would submit that if it has exceeded its authority by making the mildest observations regarding the dilatory practices which occurred in its own courtroom, then the authority of this court, and of other district courts in this circuit, to address any such practices in future cases will be seriously compromised. Indeed, defendants' success on this issue this can only have the most harmful effects in encouraging parties to commit more such practices, free of any possibility of rebuke by district courts. The court trusts that this result will not be reached in this case.

II. Motion to Reconsider

Turning to the merits of the motion to reconsider, defendants first argue that this court misconstrued Fifth Circuit jurisprudence regarding the requisites of demonstrating fraudulent joinder based upon a lack of specificity in the complaint. This argument lacks merit. In <u>Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir.2000)</u>, the Fifth Circuit considered arguments that a claim against a resident defendant was "deficient because plaintiffs have failed to plead it with sufficient particularity in accordance with <u>Fed.R.Civ.P. 9(b)</u>." While the Fifth Circuit agreed that plaintiffs' allegations of "deceitful or deceptive behavior" against the resident defendant were "somewhat conclusory," the court nevertheless emphasized that the penalty for any defective pleadings should not ordinarily be "dismissal with prejudice to refiling." Id. In so concluding, the Fifth Circuit explained as follows:

[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing. See <u>Cates v. International Telephone and Telegraph Corp., 756 F.2d 1161, 1180 (5th Cir.1985)</u> ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances."). Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.

*8 Id. The Fifth Circuit in *Hart* determined that, under the facts of that case, there existed no special circumstances justifying dismissal with prejudice as a remedy for the alleged pleading defects therein; the court accordingly reversed the district court's finding that no possibility of recovery existed against the resident defendant. Id. at 249.

The aforementioned holding in *Hart* is entirely clear and eminently reasonable. A finding of fraudulent joinder entitles non-diverse defendants to dismissal with prejudice, and it would be unreasonable to permit such an extreme remedy for an alleged pleading defect unless, as noted by the Fifth Circuit, "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." Id. The court would also note that defendants' reliance upon pleading defects is particularly suspect in this case, considering their acknowledgment that the non-diverse defendants in this case are "traditional" asbestos defendants and that claims against such defendants are "well known in Mississippi jurisprudence." The court requires all defendants, not merely those in asbestos cases, to sufficiently demonstrate fraudulent joinder so as to permit this court to dismiss any non-diverse defendants with prejudice. While there are, no doubt, cases in which such a showing may be made solely on the basis of the pleadings, this is not such a case. The Fifth Circuit recently emphasized that although the fraudulent joinder "inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." <u>McKee v. Kansas City Southern Ry. Co., 358 F.3d 329, 334 (5th Cir.2004)</u>. Defendants have clearly failed to demonstrate fraudulent joinder under such a standard. Civil litigation is a search for truth, rather than a clever game of procedural "gotcha!"

Defendants next argue that this court failed to consider their arguments that plaintiffs were misjoined in this action. This argument similarly lacks merit. The court initially notes that the plaintiffs in this case are all Mississippi residents, and there is no reasonable application of the misjoinder doctrine, as it relates to plaintiffs, which would serve to create diversity in this action. This is not a case in which plaintiffs include residents of another state who were allegedly joined for the sole purpose of destroying diversity. In such a case, the court would at least have before it a coherent remedy (i.e. severance of the nonresident plaintiffs) to apply if it were to find egregious misjoinder of plaintiffs. In such a case, the court would also have a more coherent argument that the plaintiffs were joined for the express purpose of defeating diversity jurisdiction. Defendants presumably seek for the court to sever each of the plaintiffs' claims into separate lawsuits, with the court accepting jurisdiction of those cases involving claims against non-Mississippi defendants, but this result would produce judicial chaos. Regardless, it is plain that the court did, in fact, address (albeit briefly) defendants' argument that the plaintiffs were misjoined, noting that, in light of Mississippi's liberal rules of pleadings, the court does not conclude that the joinder of the plaintiffs in this case was "egregious." Slip op. at 6. Accordingly, any argument that this court did not address this issue is disingenuous and plainly lacks merit.

*9 Defendants next argue that this court should have applied amendments to <u>Miss. R. Civ. P. 20</u> which only became effective on February 26, 2004. This argument likewise clearly lacks merit. In determining whether egregious fraudulent misjoinder is present, it is clear that the joinder of parties must be judged on the law as it existed at the time the parties were actually joined. The fact that the Mississippi Supreme Court intended for its original <u>Rule 20</u> to apply in cases such as the present one is confirmed by the fact that the Supreme Court issued the *Janssen* decision exactly one week prior to the amendment to <u>Rule 20</u>, yet the court clearly

applied the original version of Rule 20 in *Janssen*. If the court had determined to retroactively apply its decision to amend Rule 20, it would very likely have held the *Janssen* decision until after the amendment of Rule 20. Moreover, as noted in the court's original order, the Supreme Court in *Janssen* specifically re-affirmed the liberal rules of joinder as applied to asbestos cases, based on its status as a "mature" tort. In response to any accusations of bias on this issue, the court would note that this former Mississippi Supreme Court justice was among a minority of four justices who dissented to the promulgation of the liberal standards of joinder in *American Bankers Ins. Co. v. Alexander*, 818 So.2d 1073 (Miss.2001). While it is arguable that the Supreme Court should have overruled *Alexander* in *Janssen*, it plainly did not do so. Indeed, the Supreme Court in *Janssen* appeared to reaffirm its earlier conclusion that the joinder of the plaintiffs in *Alexander* did not violate Mississippi's Rule 20. In *Alexander*, the Mississippi Supreme Court affirmed the joinder of 1,371 plaintiffs in four consolidated lawsuits and the court finds little argument that the joinder of the plaintiffs in this action was "egregious," given that the *Alexander* decision specifically permitted the joinder of far more plaintiffs into a single action. Thus, it seems clear that the state rules of procedure which applied to the filing of this lawsuit permitted the joinder of the plaintiffs in this action, and this court can not conclude that plaintiffs committed an "egregious" misjoinder by taking advantage of the procedures which (rightly or wrongly) were legally available to them. Indeed, for this court to subsequently declare the joinder of plaintiffs in state court as permitted by state rules of procedure (as interpreted by that state's highest court) to be "fraudulent" under federal removal principles would, in the court's view, raise serious federalism concerns.

As to the timeliness of removal issue, defendants take issue with this court's observation that they should have known that plaintiffs were seeking in excess of the jurisdictional amount based upon the allegations of the complaint. Defendants insist that they had no basis to discern from the complaint that the amount in controversy requirement was met and only learned of this fact upon non-receipt of their admissions request regarding the amount in controversy issue. As to this issue, this court found highly persuasive plaintiffs' arguments than in two prior asbestos cases involving the very same complaint and damages request as that herein, [FN4] the very same removing defendants in this case (Ford and Chrysler), represented by the very same law firm, removed the cases upon arguments that it was, in fact, facially apparent from the same language of the complaint that the amount in controversy requirement was met.

FN4. See, *Williams et al. v. A.P. Green, et al.* and *Hinton, et al. v. A.W. Chesterson Company, et al.*

*10 In *Williams*, for example, Ford and Chrysler argued in their removal petition that:
The plaintiffs' complaint also meets the $75,000 amount-in-controversy requirement for diversity jurisdiction. 28 U.S.C. § 1332(b). According to the amended complaint, each of the plaintiffs has suffered physical or fatal injuries as a result of exposure to asbestos. Based on these alleged injuries, plaintiffs are seeking damages for, *inter alia*, wrongful death, medical expenses, loss of earnings, permanent injury, pain and suffering, mental anguish, loss of society and companionship. In addition, plaintiffs seek punitive damages from Ford and Chrysler. Given the scope of damages sought by the plaintiffs, there can be no question but that their claims each exceed $75,000.
Now that it suits their purposes to make a completely contradictory argument, Ford and Chrysler do so without hesitation; indeed, they argue that this court "made a clear error of law" by simply stating what they themselves argued twice previously before federal courts in asbestos removals.
Plaintiffs argued this point vociferously in their remand motion, and defendants never provided this court with any explanation as to why they asserted that there could be "no question" in *Williams* and *Hinton* that the amount in controversy was met, but assert just the opposite in this case. Indeed, defendants' entire response on this issue was to note in a footnote in their memorandum brief that
[p]laintiffs go to great lengths to reference other cases from different venues, with different plaintiffs, different defendants, and a widely varying number of parties (ranging from less than one hundred to several thousand) that also have been removed. The procedural history of these distinct cases, obviously, is irrelevant to the instant case and have no bearing on the instant removal.
While it may well be true that the use by Ford and Chrysler of completely contradictory jurisdictional arguments in other cases is not strictly relevant in this case, it is more than relevant as to the court's analysis of these defendants' good faith in asserting federal jurisdiction. In addition, to utilize a non-response to an admissions request as "other paper" in the present context (that is, where the complaint indicates that the amount in controversy requirement is met) renders virtually a nullity the requirement that defendants make timely efforts to ascertain the removability of cases and thus prevent disruption of the state court

proceedings. Indeed, the use of this technique permits defendants to manufacture "other paper" at a time of their choosing.

This issue constitutes yet another basis upon which, after carefully scrutinizing the removal pleadings, this court became convinced that this case was improvidently removed and that the court lacked jurisdiction. This issue also highlights an additional reason why this court sincerely concluded, based solely upon analysis of the parties' arguments in this and other cases, that Ford and Chrysler were employing a highly aggressive approach to asserting federal jurisdiction the purpose of which was primarily to reach the MDL court prior to any ruling on remand. Simply stated, this court could not imagine that these defendants actually wished for this court to closely scrutinize their arguments in this and other cases. In its original order, the court elected not to specifically chastize Ford and Chrysler for submitting obviously contradictory arguments to federal courts on the amount in controversy issue, but their arguments on this issue weighed heavily on the court's mind in electing to make very mild observations regarding the manner in which asbestos cases are being litigated. Indeed, the court chose to phrase its observations in general terms largely to avoid singling out any particular defendants for criticism. This court never imagined that its consideration in this regard would lead to charges of a general bias against asbestos defendants by Ford and Chrysler.

*11 If defendants are to be believed, this court lacks the authority to make such sincere observations without losing its authority to hear a case. If defendants should actually choose to go before the Fifth Circuit based upon the record in this case, the court would suggest that the appellate court closely scrutinize the record and arguments in the aforementioned asbestos cases and determine for itself whether Ford and Chrysler have been dealing with the federal courts on a good faith basis in asbestos removals. This court has no interest in the issue of asbestos removals other than a desire to ensure that justice and fairness prevail in its courtroom, and it is the sincere opinion of this court that, based upon an understandable desire to reach the MDL court, Ford and Chrysler have elected to employ extremely aggressive and dilatory removal practices. While this court does not have any emotional investment in this issue like the district court in *DaimlerChrysler*, it is certainly noteworthy that Ford and Chrysler were the exact same defendants singled out by the district judge in that case for "the most manipulative and craven approach to litigation that this court has ever witnessed." *Id.* at 700. This court would not characterize these defendants' tactics in these terms, but it does seem clear that they have used a dilatory and highly aggressive approach in this court's asbestos removal cases. The court would also reemphasize that Judge Gex, characterized by Ford and Chrysler in their motion as "carr[ying] the entire asbestos docket for the Southern District of Mississippi" and "particularly knowledgeable regarding asbestos claims" has excoriated Ford and Chrysler for frivolous removals, in far harsher terms than this court. *See, e.g. Hinton, et al. v. Chesterton, et al.*, No. 1:02cv147 (March 13, 2003). In *Hinton*, Judge Gex wrote that he "could only interpret" Ford and Chrysler's removal in that case as "an attempt to delay proceedings in state court," and he characterized the removal as "frivolous" and warned that any future removals on the same basis would be dealt with as contempt. Given that Judge Gex is represented to carry the entire docket of asbestos cases in the southern district, it seems reasonable to assume that he has not been forced to recuse himself from hearing asbestos cases based upon his rebuke of Ford and Chrysler for frivolous removals. The fact that litigants with the records of these two defendants should even raise the possibility of going before the Fifth Circuit to seek this court's removal for a mild rebuke is, quite honestly, stunning to this court.

In the court's view, defendants' remaining arguments were adequately addressed in the court's prior order, and no elaboration is required now. For the foregoing reasons, the court concludes that the motion to recuse and reconsider is not well taken and is due to be denied.

It is therefore ordered that defendants' motion to recuse and to reconsider [99-1] are denied. Given that defendants have expressed an intent to seek some form of mandamus relief with the Fifth Circuit Court of Appeals, the court directs that the clerk of the court retain the file in this case until the completion of any such mandamus proceedings.

*12 SO ORDERED.

N.D.Miss.,2004.

Rosamond v. Garlock Sealing Technologies, Inc.

2004 WL 1059811 (N.D.Miss.)