## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:05-cv- |
| | ) | 00998-MEF-SRW |
| MERCK & CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS

Defendants Merck & Company, Inc. ("Merck") and Matthew King, Patricia Aiken, Gary Harlan, and Robert Wall (the "professional representatives") hereby collectively respond to Plaintiff's opposition to the Motions to Dismiss filed by the professional representatives as follows:

## I.    The Court Should Stay Any Ruling On Plaintiff's Pending Motion.

For purposes of judicial economy and consistency, Merck and the professional representatives respectfully request the Court stay any ruling upon the motion pending this case's transfer to *In re VIOXX Products Liability Litigation*, MDL-1657, the coordinated federal Vioxx® product liability Multidistrict Litigation proceeding in the Eastern District of Louisiana. *See In re Vioxx Prods.*

1

*Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). On November 25, 2005, the Judicial Panel on Multidistrict Litigation issued Conditional Transfer Order No. 32, conditionally transferring this case to the MDL. *See* Conditional Transfer Order No. 32, attached as Exhibit A. Now that this case has been conditionally transferred, the most appropriate course of action in this case is to stay all proceedings – including considerations of the defendants' Motions to Dismiss and Plaintiff's Motion to Remand – until such time that they can be addressed by the MDL Court. Indeed, the very purpose of the MDL proceeding is to ensure consistent and efficient treatment of pretrial motions such as this.

This approach has been followed in more than 1000 Vioxx cases around the country, including more than 200 cases in which motions were pending. *See, e.g., Jones v. Merck & Co. Inc.,* CV-05-427-RDP (N.D. Ala. Apr. 25, 2005), attached as Exhibit B (stayed with motions to remand pending and over the objections of plaintiff's counsel); *Woods v. Merck & Co. Inc.,* CV-05-0425-LG-M (S.D. Ala. Aug. 17, 2005), attached as Exhibit C (same). Staying the present case will also allow the fraudulent joinder issue raised by this and many other cases to be decided in a coordinated matter. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court]...[c]onsistency as well as economy is ... served [by transferring and consolidating cases as to which remand motions are pending]").

Accordingly, the Defendants respectfully urge the Court to stay all proceedings in this action and defer consideration of all motions before the Court pending final MDL transfer.

## II.    Plaintiff Has Conceded That All Claims Asserted Against The Professional Representatives Should Be Dismissed Except For Fraud.

Plaintiff has not contested that the Defendants' Motions to Dismiss are due to be granted in favor of the professional representatives as to the following claims: AEMLD and strict liability (Count I), negligence and wantonness (Count II), negligence per se (Count III), unjust enrichment (Count IV), breach of express warranty (Count V), breach of implied warranty (Count VI), corporate responsibility (Count VII), and civil conspiracy (Count VIII). *See* Plaintiff's Response to Motions to Dismiss. Accordingly, all of these claims are due to be dismissed without opposition.

## III.    Plaintiff's Claim For Fraud Is Due To Be Dismissed As Well.

The only claim Plaintiff even attempts to defend in opposition to the Defendants' Motions to Dismiss is his claim for fraud. As set forth below, however, Plaintiff's fraud count fails to state a claim against the professional representatives under Alabama law and is due to be dismissed as well.

**A.    Plaintiff's fraud claim fails under _Legg v. Wyeth_ because Plaintiff has failed to establish knowledge or bad faith on the part of the professional representatives.**

The Eleventh Circuit's recent holding in _Legg v. Wyeth_, 2005 WL 2756717 (11th Cir. Oct. 25, 2005), attached as Exhibit D, confirms that Plaintiff's fraud claim against the professional representatives is due to be dismissed because Plaintiff has failed to establish knowledge or bad faith on the part of the professional representatives.  In _Legg_, plaintiffs Carl and Dorothy Legg asserted numerous claims against Wyeth, a pharmaceutical manufacturer, and several of its professional representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the Wyeth medicine, Redux.  Wyeth removed the case on diversity grounds, arguing that the Leggs had fraudulently joined a non-diverse professional representative. Wyeth supported its removal with the affidavits of its non-diverse professional representatives, which stated in pertinent part:

> My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. . . . I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings. . . . I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 2005 WL 2756717 at *3. In response to Wyeth's submission, the Leggs simply offered certain training materials used by Wyeth and its professional representatives and otherwise rested on the allegations in the Complaint.

In addressing the district court's remand of the case in light of the evidence, the Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the professional representative], as an individual employee, personally liable for any wrongful action by Wyeth in the absence of evidence that [the professional representative] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at *6. The Court explained that when the defendant presents evidence such as declarations that are not disputed by Plaintiff, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.* at *4. Thus, the Eleventh Circuit found the remand had been improvidently granted, noting that "the Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Id.* at *6 (quoting *Wecker v. Nat'l Enameling and Stamping Co.,* 204 U.S. 176, 186 (1907)).

As with the professional representative in *Legg*, the professional representatives in this case have submitted declarations stating unequivocally that

> The information I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me

5

with the FDA-approved prescribing information and the other information I used in speaking with the physicians regarding Vioxx. I had no involvement in the development of preparation of prescribing information for Vioxx, I did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a professional representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physician who may have prescribed Vioxx.

See Declarations of professional representatives, attached as Exhibit E.

Like the Plaintiffs in *Legg*, the Plaintiff in this case has not offered any evidence to dispute the declarations offered by the professional representatives. Rather, like the Plaintiffs in *Legg*, the Plaintiff here has only attached various documents and training materials supporting general allegations against Merck, none of which address the individual elements of a fraud claim against these professional representatives.

*Legg* confirms long-standing Alabama law in its treatment of actionable misrepresentations and the requirement of knowledge. 2005 WL 2756717 at *6 (stating "there is no reasonable basis to predict that an Alabama Court would find [the professional representative], as an individual employee, personally liable for any wrongful action by [his company] in the absence of evidence that [he] knew or should have known of [the medication's] allegedly dangerous effects"). An

6

essential element of Plaintiff's fraudulent misrepresentation claim is that the professional representatives *knew* of the alleged falsity of their representations. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002) (discussing elements of fraud claims under Alabama law). Plaintiff's conclusory allegations regarding the alleged knowledge of the particular professional representatives named here are insufficient to avoid dismissal. In particular, Plaintiff's Complaint makes the conclusory allegation that all the professional representatives "were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of Plaintiff's physician, was false." Complaint ¶ 121. Addressing complaints with similarly conclusory allegations of knowledge on the part of professional representatives, the Rezulin MDL judge held that such allegations were insufficient to warrant remand. *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001). Those allegations do not satisfy an "essential element[] of fraud, most obviously that the sales professionals knew that Rezulin was unsafe at the time they spoke but withheld the truth to mislead plaintiffs." *Id.* at 283 & 284 n.29 (*citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (to satisfy knowledge requirement of fraud claim,

plaintiff must allege circumstances to show that defendants knew their representations were false when made)).[1]

As the Rezulin MDL Court held, remand should be denied where, as here, plaintiffs "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants.'" *Id.* at 283. Indeed, the Rezulin MDL Court subsequently denied remand in two actions naming a professional representative based on the conclusory claims against her and plaintiffs' failure to refute her affidavit. *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001); *see generally Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal"). Accordingly, Plaintiff's conclusory allegations of the professional representatives' knowledge of the alleged risks of Vioxx are insufficient to warrant remand and prevent dismissal.

The professional representatives did not make any knowing misrepresentations to physicians about Vioxx. *See* Declarations of professional representatives. The information used by the professional representatives in their dealings with physicians about Vioxx came from their employer. *See id.* The

---

[1] Although these quotations are contained in the section of the opinion dealing with two fraudulent joinder cases from Mississippi, the Court also applies this reasoning to the Alabama cases later in the opinion saying "the Alabama complaint suffers from the same defect as the Mississippi cases joining sales professionals . . ." *Id.* at 286.

professional representatives did not draft the prescribing information or warnings and had no responsibility to conduct independent research. *See id.* They acted in good faith at all times with physicians who prescribed Vioxx. *See id.*; *see also Legg*, 2005 WL 2756717 at *3, *6. As a result, the uncontested fact is that the professional representatives can only be considered "conduits" through which *allegedly* incorrect information from their employer was supplied to third parties. As such, they cannot be held liable for fraud. *See Legg*, 2005 WL 2756717 at *5 (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)) (stating "'those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith'"). Without evidence that the professional representatives made knowing misrepresentations to the physicians or acted in bad faith, there is "no reasonable possibility" that an Alabama court would conclude that the professional representatives breached a duty to Plaintiff. *See Legg*, 2005 WL 2756717 at *6.

For the above reasons, Plaintiff cannot maintain a claim for fraud against the individual professional representatives. Therefore, Plaintiff's claims of fraud are due to be dismissed under the authority of *Legg*.

**B.**   **Plaintiff's claims for fraud fail because he fails to demonstrate reliance by Plaintiff or his physician and his claims are barred by the learned intermediary doctrine.**

Plaintiff's fraud claim against the professional representatives fails for other reasons as well.   First, an essential element of these claims is reliance on the alleged misrepresentation. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression).   Yet Plaintiff only summarily alleges that he and his physician relied on the professional representatives' alleged misrepresentations in prescribing Vioxx to Plaintiff.   Complaint ¶ 110.   The professional representatives have never met nor spoken with Plaintiff.   *See* Declarations of professional representatives.   Plaintiff fails to identify how he personally relied on any alleged misrepresentation made to his doctor, or even that his doctor relayed any of this alleged misinformation to Plaintiff.   Plaintiff's argument appears to be that, because alleged falsehoods were made to his physician, these representations are automatically imputed to him.   The Complaint, however, fails to allege that Plaintiff was even aware of the alleged statements made to the prescribing physician.   In fact, Plaintiff fails to even identify his physician or establish that any of the professional representatives had any contact with his physician.   Without some evidence or allegation that Plaintiff or his physician relied on an alleged

misrepresentation by these professional representatives, these claims must fail for lack of requisite reliance.

Furthermore, Plaintiff's physician in this case is presumably a licensed physician with extensive training, and makes his or her own determination regarding medication and treatment of his or her patients.[2]  As such, the learned intermediary doctrine bars Plaintiff's claims against the individual defendants for an alleged failure to disclose.  *Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984) (observing that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient and concluding that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer"); *see also Morguson v. 3M Co.*, 857 So. 2d 796, 801-02, n.1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warnings are too complex to be fully appreciated by the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000)).

---

[2] The identity of Plaintiff's physician is noticeably absent from the complaint in this case.

C.    **Plaintiff's claims against the professional representatives do not satisfy the particularity requirement of Rule 9(b).**

Finally, Plaintiff cannot establish claims of fraud and deceit against the professional representatives because he has failed to plead with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure.  The rules are identical, and both call for dismissal if averments of fraud are not stated "with particularity."  Under Rule 9(b), "[t]he pleader . . . must use more than generalized or conclusionary statements when setting out the allegations of fraud.  The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *Lyde v. United Ins. Co. of Am.*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)).

Here, Plaintiff fails to show the "time, place and purported contents of the false representations" allegedly made by the professional representatives as required by the rule and also fails to identify the physician to whom any allegedly fraudulent statements were made.  Accordingly, his claims must be dismissed. *See Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995); *see* Ala. R. Civ. P. 9(b) (Committee Comments on 1973 Adoption, subdivision (b)) (plaintiff must show the "time, place and the contents or substance of the false representation, the

fact misrepresented, and the identification of what has been obtained"). *See also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"); *cert. denied*, 537 U.S. 1105 (2003); *Mixon v. Cason*, 622 So. 2d 918, 920 (Ala. 1993) ("The plaintiff did not plead with the specificity required by Rule 9(b)" and "the trial court properly dismissed").

Plaintiff goes to great lengths to describe the marketing campaign for Vioxx but fails to state how, when, where, and most importantly, *if* Plaintiff heard of this campaign. Nor does Plaintiff state when, where, or even *if* Plaintiff's physician received this information or, most importantly, if his or her prescribing decisions were affected in any way by this information. Plaintiff has offered nothing to demonstrate that the professional representatives even called on his treating or prescribing physician. The fact that Plaintiff's counsel has possession of Merck's marketing materials produced in other Vioxx cases does not link those marketing materials to the prescription of Vioxx written for Plaintiff. Further, a detailed description of these materials without details regarding if and how they were presented to the prescribing physician, or, more importantly, to Plaintiff, does not satisfy the requirements of Rule 9(b). *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b)

and supported finding of fraudulent joinder). Here, the professional representatives have never met nor spoken with Plaintiff, and Plaintiff has failed to show that the professional representatives ever promoted Vioxx to his prescribing physician. *See Legg*, 2005 WL 2756717 at *3 n.4; Declarations of professional representatives.

In short, Plaintiff's complaint falls far short of the heightened pleading standard for fraud, and as numerous courts have recognized, his motion to remand should be denied and Defendants' Motions to Dismiss should be granted on this ground as well.

## CONCLUSION

For these reasons, Defendant respectfully requests the Court to stay all proceedings in this action and defer consideration of all motions before the Court pending final MDL transfer, and in the alternative, to grant Defendants' Motions to Dismiss and to deny Plaintiff's Motion For Remand.

Respectfully submitted,

_____/s/ George R. Parker_____
George R. Parker (PAR086)
One of the Attorneys for Defendant
Merck & Co., Inc.

OF COUNSEL

BRADLEY ARANT ROSE & WHITE LLP
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: gparker@bradleyarant.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that I have mailed by U.S. Postal Service this document to the following:

Thomas J. Knight
James S. Hubbard
Hubbard & Knight
1125 Noble Street
Anniston, Alabama 36201

Steve Morris
Post Office Box 814
Wedowee, Alabama 36278

Respectfully submitted,

/s/ George R. Parker

MDL 1657

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 2 5 2005

FILED
CLERK'S OFFICE

## DOCKET NO. 1657

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE VIOXX PRODUCTS LIABILITY LITIGATION

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-32)

On February 16, 2005, the Panel transferred 138 civil actions to the United States District Court for the Eastern District of Louisiana for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 2,341 additional actions have been transferred to the Eastern District of Louisiana. With the consent of that court, all such actions have been assigned to the Honorable Eldon E. Fallon.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Eastern District of Louisiana and assigned to Judge Fallon.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Eastern District of Louisiana for the reasons stated in the order of February 16, 2005, 360 F.Supp.2d 1352 (J.P.M.L. 2005), and, with the consent of that court, assigned to the Honorable Eldon E. Fallon.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of Louisiana. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:



Michael J. Beck
Clerk of the Panel

EXHIBIT
A

OFFICIAL FILE COPY

IMAGED NOV 2 8 2005

## SCHEDULE CTO-32 - TAG-ALONG ACTIONS
## DOCKET NO. 1657
## IN RE VIOXX PRODUCTS LIABILITY LITIGATION

DIST. DIV. C.A. #                    CASE CAPTION

**ALABAMA MIDDLE**
ALM  3  05-998          Michael D. May v. Merck & Co., Inc., et al.

**ALABAMA NORTHERN**
ALN  6  05-2172         Bonnie Sue Rogers, etc. v. Merck & Co., Inc.

**CALIFORNIA CENTRAL**
CAC  2  05-7581         Carol Drabelle, et al. v. Merck & Co., Inc., et al.
CAC  2  05-7583         Richard Marquez v. Merck & Co., Inc., et al.
CAC  2  05-7586         Gary Frederick Milleman, et al. v. Merck & Co., Inc., et al.
CAC  2  05-7592         Mary Virginia McDonough, et al. v. Merck & Co., Inc., et al.
CAC  2  05-7644         Denise A. Morris v. Merck & Co., Inc.
CAC  2  05-7647         Joyce Shafor, et al. v. Merck & Co., Inc.

**CALIFORNIA EASTERN**
CAE  2  05-2140         Patricia Love v. Merck & Co., Inc., et al.

**CALIFORNIA NORTHERN**
CAN  3  05-4310         David Porter, et al. v. Merck & Co., Inc.
CAN  3  05-4311         Joseph Kruger, et al. v. Merck & Co., Inc.
CAN  5  05-4368         Edith Kadach v. Merck & Co., Inc., et al.

**HAWAII**
HI   1  05-668          First Insurance Co. of Hawaii, Ltd. v. Merck & Co., Inc.

**KENTUCKY EASTERN**
KYE  0  05-189          Howard Gulley v. Merck & Co., Inc.
KYE  0  05-191          Raymond G. Cordle, et al. v. Merck & Co., Inc., et al.
KYE  0  05-198          Terry Bush v. Merck & Co., Inc.
KYE  0  05-201          Brenda Sparks, et al. v. Merck & Co., Inc.
KYE  2  05-211          Gary L. Kratzer v. Merck & Co., Inc., et al.
KYE  3  05-73           Richard Douglas Southworth, etc. v. Merck & Co., Inc., et al.
KYE  5  05-426          Kenneth Michael Short, et al. v. Merck & Co., Inc.
KYE  5  05-427          Stanley Long v. Merck & Co., Inc.
KYE  5  05-432          Norlena Slone v. Merck & Co., Inc.
KYE  5  05-433          Larry Smith v. Merck & Co., Inc., et al.
KYE  5  05-434          Clarence Parido, et al. v. Merck & Co., Inc., et al.
KYE  5  05-449          Patricia A. Swanagin, et al. v. Merck & Co., Inc., et al.
KYE  5  05-450          Hubert Little, etc. v. Merck & Co., Inc., et al.
KYE  5  05-454          Noah Taylor, et al. v. Merck & Co., Inc., et al.
KYE  5  05-463          Charlotte Haddix, etc. v. Merck & Co., Inc.
KYE  6  05-570          Lawrence K. Butcher v. Merck & Co., Inc.
KYE  6  05-571          Anthony P. Dattilo v. Merck & Co., Inc., et al.
KYE  6  05-572          Londis Meek, et al. v. Merck & Co., Inc., et al.
KYE  6  05-573          Jerry Anderson, et al. v. Merck & Co., Inc., et al.
KYE  6  05-576          Jody Hays v. Merck & Co., Inc.
KYE  6  05-577          Virginia Nadine Perry v. Merck & Co., Inc.
KYE  6  05-584          Gary W. Hall, et al. v. Merck & Co., Inc., et al.
KYE  6  05-585          Kathleen Harp v. Merck & Co., Inc., et al.
KYE  6  05-586          John Mullins, et al. v. Merck & Co., Inc.
KYE  6  05-587          Juanetta Bush, et al. v. Merck & Co., Inc., et al.
KYE  6  05-592          Jerma Madon, et al. v. Merck & Co., Inc., et al.
KYE  6  05-593          David Roberts v. Merck & Co., Inc., et al.

SCHEDULE CTO-32 TAG-ALONG ACTIONS  (MDL-1657)                                       PAGE 2 of 4

**DIST. DIV. C.A. #**                    **CASE CAPTION**

| KYE | 6 | 05-601 | Barbara Asher, etc. v. Merck & Co., Inc. |
| KYE | 6 | 05-608 | Anita Parks v. Merck & Co., Inc. |
| KYE | 7 | 05-336 | Cheryl Adams v. Merck & Co., Inc., et al. |
| KYE | 7 | 05-337 | Theresa Taylor, et al. v. Merck & Co., Inc., et al. |
| KYE | 7 | 05-341 | Lavern Arnett v. Merck & Co., Inc. |
| KYE | 7 | 05-342 | O'Dean Smith, et al. v. Merck & Co., Inc. |
| KYE | 7 | 05-343 | Ralph Crager v. Merck & Co., Inc., et al. |
| KYE | 7 | 05-344 | Nell Canada v. Merck & Co., Inc. |
| KYE | 7 | 05-345 | Mark A. York, Sr., et al. v. Merck & Co., Inc., et al. |
| KYE | 7 | 05-346 | Bobby Wright, et al. v. Merck & Co., Inc. |
| KYE | 7 | 05-347 | Roma Lynn Prater v. Merck & Co., Inc. |
| KYE | 7 | 05-351 | Adron Thornsberry, et al. v. Merck & Co., Inc., et al. |

**KENTUCKY WESTERN**

| KYW | 1 | 05-172 | Kristie Miller, etc. v. Merck & Co., Inc. |
| KYW | 1 | 05-173 | Debra Humburg, et al. v. Merck & Co., Inc., et al. |
| KYW | 1 | 05-174 | James C. Miller v. Merck & Co., Inc. |
| KYW | 1 | 05-177 | Riley Wells v. Merck & Co., Inc., et al. |
| KYW | 1 | 05-178 | Patricia Oakes, etc. v. Merck & Co., Inc., et al. |
| KYW | 1 | 05-179 | Dorothy Payne, etc. v. Merck & Co., Inc., et al. |
| KYW | 1 | 05-180 | Ethel Wolf v. Merck & Co., Inc., et al. |
| KYW | 1 | 05-181 | John Nowak, et al. v. Merck & Co., Inc., et al. |
| KYW | 1 | 05-186 | Randall Pyles, et al. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-637 | William Clayton, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-638 | Charles Schultise v. Merck & Co., Inc. |
| KYW | 3 | 05-639 | Margaret Vandivier v. Merck & Co., Inc. |
| KYW | 3 | 05-640 | Mary E. Lester v. Merck & Co., Inc. |
| KYW | 3 | 05-641 | Sabina Chambers v. Merck & Co., Inc. |
| KYW | 3 | 05-643 | Richard W. Allen, Sr., et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-644 | Glendon Dixon v. Merck & Co., Inc. |
| KYW | 3 | 05-650 | Debra Jean Nold, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-652 | Lawrence Shepherd, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-653 | J. William Manning, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-654 | Pamela Winters, etc. v. Merck & Co., Inc. |
| KYW | 3 | 05-655 | Jennifer M. Popp, etc. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-660 | Fleam Leach v. Merck & Co., Inc. |
| KYW | 3 | 05-661 | Tim Ellis, et al. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-663 | Marlynn Fox, etc. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-665 | Tina Day v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-666 | Hazel McKee, et al. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-667 | Olando Simpson, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-668 | Michael F. Simpson, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-670 | Susan Walker, etc. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-671 | Daniel Ryan v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-672 | Sharon Schafer, et al. v. Merck & Co., Inc. |
| KYW | 3 | 05-673 | Joan Anne Schwartz, etc. v. Merck & Co., Inc. |
| KYW | 3 | 05-674 | Perry Schneider, et al. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-675 | Mary Louise Schmidt, etc. v. Merck & Co., Inc. |
| KYW | 3 | 05-676 | Manson Whelan v. Merck & Co., Inc. |
| KYW | 3 | 05-677 | David G. Thomas v. Merck & Co., Inc. |
| KYW | 3 | 05-678 | A. Walter Tyson, etc. v. Merck & Co., Inc., et al. |
| KYW | 3 | 05-680 | Carl Ansert, Jr., et al. v. Merck & Co., Inc., et al. |
| KYW | 4 | 05-154 | Cheyenne Albro v. Merck & Co., Inc. |
| KYW | 4 | 05-155 | Everett Hack v. Merck & Co., Inc. |
| KYW | 5 | 05-205 | Gerald Boyd v. Merck & Co., Inc. |
| KYW | 5 | 05-206 | Ola Nelson v. Merck & Co., Inc., et al. |
| KYW | 5 | 05-210 | Michael E. Wilson v. Merck & Co., Inc., et al. |

SCHEDULE CTO-32 TAG-ALONG ACTIONS  (MDL-1657)                          PAGE 3 of 4

DIST. DIV. C.A. #                 CASE CAPTION

**MINNESOTA**
MN    0  05-2501      Lisa Tuggle, etc. v. Merck & Co., Inc.
MN    0  05-2517      Clara Richardson, etc. v. Merck & Co., Inc.
MN    0  05-2530      Alfred J. Hoerner v. Merck & Co., Inc.

**MISSOURI EASTERN**
MOE   4  05-1946      Debbie Cavender, et al. v. Merck & Co., Inc.
MOE   4  05-1955      Thelma Zimmerman, et al. v. Merck & Co., Inc., et al.
MOE   4  05-1956      Samella Butler, et al. v. Merck & Co., Inc., et al.
MOE   4  05-1967      Jana Meehan v. Merck & Co., Inc., et al.
MOE   4  05-1969      Steve Pickard, et al. v. Merck & Co., Inc., et al.
MOE   4  05-1970      Martha Maxwell, et al. v. Merck & Co., Inc., et al.
MOE   4  05-1973      Rita B. Barker, et al. v. Merck & Co., Inc.

**MISSOURI WESTERN**
MOW   4  05-1023      Frank Canaleo, etc. v. Merck & Co., Inc.
MOW   4  05-1025      Kathy Pence, etc. v. Merck & Co., Inc.
MOW   4  05-1026      Kathryn Carter, etc. v. Merck & Co., Inc.
MOW   4  05-1027      Brandon Worlow v. Merck & Co., Inc.
MOW   4  05-1028      Richard Shearer v. Merck & Co., Inc.
MOW   4  05-1029      Jason Lida, etc. v. Merck & Co., Inc.
MOW   4  05-1035      John Webster v. Merck & Co., Inc.
MOW   4  05-1052      Cheryl Ann Mahon v. Merck & Co., Inc., et al.

**MISSISSIPPI SOUTHERN**
MSS   3  05-649       Napoleon Alexander, etc. v. Merck & Co., Inc.

**OHIO NORTHERN**
OHN   1  05-1772      Donna Casteel, etc. v. Merck & Co., Inc.
OHN   1  05-2503      Geraldine Abrahams, et al. v. Merck & Co., Inc.
OHN   1  05-2504      Colleen Conko v. Merck & Co., Inc.
OHN   5  05-2471      Shirley Madick, et al. v. Merck & Co., Inc.

**OKLAHOMA WESTERN**
OKW   5  05-1229      Carolyn Cruce, etc. v. Merck & Co., Inc.

**PENNSYLVANIA EASTERN**
PAE   2  05-5461      Irma Leshinski, et al. v. Merck & Co., Inc.

**PENNSYLVANIA WESTERN**
PAW   2  05-1484      P. Fred Beorn, et al. v. Merck & Co., Inc.

**PUERTO RICO**
PR    3  05-2025      Francisco Muniz-Domena, et al. v. Astra Merck, Inc., et al.
PR    3  05-2037      Juan Antonio Velez-Jimenez, et al. v. Astra Merck, Inc., et al.
PR    3  05-2049      Jose Portalatin-Cordero, et al. v. Astra Merck, Inc., et al.

**SOUTH DAKOTA**
SD    1  05-1046      Lavonne Butler v. Merck & Co., Inc.
SD    1  05-1047      Marlene Stickfort v. Merck & Co., Inc.
SD    1  05-1048      George Witter v. Merck & Co., Inc.

**TENNESSEE MIDDLE**
TNM   3  05-837       Mary A. Jordan, et al. v. Merck & Co., Inc.
TNM   3  05-839       Gloria White, etc. v. Merck & Co., Inc.
TNM   3  05-841       Ron R. Moore, etc. v. Merck & Co., Inc.
TNM   3  05-843       Merita Kay Roysdon, et al. v. Merck & Co., Inc.

SCHEDULE CTO-32 TAG-ALONG ACTIONS (MDL-1657)                    PAGE 4 of 4

| DIST. DIV. C.A. # | | | CASE CAPTION |
|---|---|---|---|
| TNM | 3 | 05-844 | Tyra Taylor, et al. v. Merck & Co., Inc. |
| TNM | 3 | 05-845 | Betty J. Moore, etc. v. Merck & Co., Inc. |
| TNM | 3 | 05-848 | Debra A. Bennett v. Merck & Co., Inc. |
| TNM | 3 | 05-849 | Joe T. Givan, et al. v. Merck & Co., Inc. |
| TNM | 3 | 05-850 | Teresa Gallaher, et al. v. Merck & Co., Inc. |
| TNM | 3 | 05-851 | Sarah Pierce, et al. v. Merck & Co., Inc. |
| TNM | 3 | 05-852 | John Richmond, etc. v. Merck & Co., Inc. |
| TNM | 3 | 05-853 | James Boggess, etc. v. Merck & Co., Inc. |
| TNM | 3 | 05-854 | Andrew Golden, etc. v. Merck & Co., Inc. |
| TNM | 3 | 05-855 | Roger Kelly, Sr. v. Merck & Co., Inc. |
| TNM | 3 | 05-856 | Nadine Freeman, et. al. v. Merck & Co., Inc. |
| TNM | 3 | 05-857 | Elsie I. Hollingsworth v. Merck & Co., Inc. |
| TNM | 3 | 05-858 | Margaret A. Brooks v. Merck & Co., Inc. |
| TNM | 3 | 05-861 | Janet D. Roberick v. Merck & Co., Inc. |
| TNM | 3 | 05-862 | Emma Spencer, etc. v. Merck & Co., Inc. |
| TNM | 3 | 05-863 | Charlotte Matlock, et al. v. Merck & Co., Inc. |
| TNM | 3 | 05-864 | Elizabeth G. Washington v. Merck & Co., Inc. |
| TNM | 3 | 05-866 | Charles M. Turner v. Merck & Co., Inc. |
| TNM | 3 | 05-868 | Verie B. Thompson, Jr. v. Merck & Co., Inc. |
| TNM | 3 | 05-869 | Jewel Smith v. Merck & Co., Inc. |
| TNM | 3 | 05-870 | Edna D. Ross v. Merck & Co., Inc. |
| TNM | 3 | 05-871 | Joe Nelson v. Merck & Co., Inc. |
| TNM | 3 | 05-872 | Alfard Huqq v. Merck & Co., Inc. |
| TNM | 3 | 05-873 | Shirley M. Johnson v. Merck & Co., Inc. |
| TNM | 3 | 05-874 | Charles L. McDonald v. Merck & Co., Inc. |
| TNM | 3 | 05-880 | William E. Hughes v. Merck & Co., Inc. |
| TNM | 3 | 05-881 | Louise Gillespie v. Merck & Co., Inc. |
| TNM | 3 | 05-882 | Kevin J. Callahan v. Merck & Co., Inc. |
| TNM | 3 | 05-883 | James J. Walton v. Merck & Co., Inc. |

TENNESSEE WESTERN

| TNW | 1 | 05-1322 | Norris H. Davis v. Merck & Co., Inc., et al. |
|---|---|---|---|
| TNW | 1 | 05-1323 | Roberta J. Evans v. Merck & Co., Inc., et al. |
| TNW | 1 | 05-1324 | Doyle Johnson, etc. v. Merck & Co., Inc. |
| TNW | 1 | 05-1329 | James R. Daniel, et al. v. Merck & Co., Inc., et al. |
| TNW | 1 | 05-1332 | Roger Floyd, et al. v. Merck & Co., Inc., et al. |
| TNW | 1 | 05-1333 | Sally Woods, etc. v. Merck & Co., Inc., et al. |
| TNW | 2 | 05-2795 | Sylvester Townsel, et al. v. Merck & Co., Inc., et al. |
| TNW | 2 | 05-2804 | Norman A. Jester, et al. v. Merck & Co., Inc., et al. |

TEXAS EASTERN

| TXE | 1 | 05-676 | William Edward Morgan v. Merck & Co., Inc., et al. |
|---|---|---|---|
| TXE | 1 | 05-701 | Maria Antonieta DeLoera, et al. v. Merck & Co., Inc. |
| TXE | 2 | 05-489 | Bettye Baty, et al. v. Merck & Co., Inc. |

TEXAS SOUTHERN

| TXS | 2 | 05-308 | Patrtricia Legesse v. Merck & Co., Inc. |
|---|---|---|---|
| TXS | 4 | 05-3696 | Linda J. Collins v. Merck & Co., Inc., et al. |

VERMONT

| VT | 2 | 05-274 | Michele S. LaRouche, et al. v. Merck & Co., Inc. |
|---|---|---|---|



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

STEPHANIE JONES, et al.,    }
          }
  Plaintiffs,      }
          }
v.          }  Case No.: 2:05-CV-427-RDP
          }
MERCK & COMPANY, INC., et al.,  }
          }
  Defendants.     }

## ORDER

Pending before the court are Plaintiff's Motion to Reconsider Order Granting Defendant's Motion to Stay and Motion for Oral Argument (Doc. #20) filed on April 15, 2005, and Defendant Merck & Co., Inc.'s Opposition to Plaintiff's Motion to Reconsider Order Granting Defendant's Motion to Stay (Doc. #22) filed on April 22, 2005. Plaintiff's Motion to Reconsider Order Granting Defendant's Motion to Stay and Motion for Oral Argument is **GRANTED IN PART** and **DENIED IN PART**. More specifically, Plaintiff's Motion for Oral Argument is **GRANTED** as the court held a telephone conference in this case on April 25, 2005, beginning at 2:00 p.m.

However, with respect to Plaintiff's Motion to Reconsider Order Granting Defendant's Motion to Stay, as discussed during the conference call, the court recently received a letter from the Judicial Panel on Multidistrict Litigation dated April 5, 2005, enclosing a copy of the conditional transfer order relating to the transfer of this case to MDL-1657—*In re Vioxx Products Liability Litigation*. In light of this development and for the reasons set forth in Defendant Merck & Co., Inc.'s Opposition to Plaintiff's Motion to Reconsider Order Granting Defendant's Motion to Stay, Plaintiff's Motion to Reconsider Order Granting Defendant's Motion to Stay is **DENIED**.



EXHIBIT
B

DONE and ORDERED this _____25th_____ day of April, 2005.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARGUERITE WOODS,                          )
                                           )
    Plaintiffs,                        )
                                           )
v.                                         )    CIVIL ACTION NO. 05-0425-CG-M
                                           )
MERCK & CO., INC., et al.,                 )
                                           )
    Defendants.                        )

## ORDER

    This matter is before the court on motion of defendant, Merck & Co., Inc. ("Merck"), to stay to allow transfer to the MDL (Doc. 3), plaintiff's response (Doc. 15), and plaintiff's motion to remand and for expedited hearing (Doc. 14). For reasons discussed below, the court finds that a stay is appropriate.

    Merck removed this case to this court claiming diversity jurisdiction in that the resident defendants were fraudulently joined. Plaintiff contends that Merck has not demonstrated that plaintiff has failed to establish a colorable claim against the resident defendants. As a result, plaintiff asserts that the action should be remanded. Plaintiff cites similar cases in this district as well as other districts in Alabama which have concluded that remand was appropriate. However, the court notes that this court has also found it appropriate to stay such actions in the past. For instance, this court stayed the proceedings in Faith Beverly et al. v. Wyeth, et al., 03-cv-0866-CB-C (S.D. Ala.) stating the following:

    A district has the authority to stay proceedings in cases pending before it. Landis v. North American Co., 299 U.S. 248 (1936); CTI-Container Leasing Corp. v. Uiterwyk, 685 F.2d 1284 (11th Cir. 1982). "[T]he power to stay proceedings is



incidental to the power inherent in every court to control the disposition of the causes
on its docket with economy of time and effort for itself, for counsel, and for litigants."
Landis, 299 U.S. at 166. This authority extends to cases in which a transfer decision by
the MDL Panel is pending. [Footnote: The existence of a conditional transfer order
does not divest the transferor court of jurisdiction, 18 U.S.C. § 1407; JPML Rule 1.5.]
See, e.g., Hertz Corp. v. The Gator Corp., 250 F.Supp.2d 421, 424 (D.N.J. 2003).
The existence of jurisdictional objections do not affect either the transferor court's
ability to issue a stay or the MDL Panel's authority to transfer an action. Moore v.
Wyeth-Ayerst Laboratories, 236 F.Supp.2d 509, 512 (D. Md. 2002).

A stay of proceedings in potential MDL cases is appropriate when it promotes
judicial economy and efficiency. Rivers v. Walt Disney Co., 908 F.Supp. 1358, 1360
(C.D. Cal. 1997). When jurisdictional issues are raised that may arise "in hundreds or
even thousands of cases throughout the nation. . . consistency as well as economy [are].
. . served" by having those issues decided by a single court. In re Ivy, 901 F.2d 7, 9
(2nd Cir. 1990); accord In re Air Crash Disaster at Florida Everglades, 368 F.Supp.
812 (J.P.M.L. 1973). Consequently, a stay is proper where the motion to remand
raises issues that have been or are likely to be decided by the transferee court. See,
e.g., Gonzalez v. American Home Products Corp., 223 F.Supp.2d 803 (S.D. Tex.
2002) (granting motion to stay despite pending motion to remand because dispositive
issue was probably common to other related MDL cases); Moore, 236 F.Supp.2d at
510-11 (granting motion to stay where transferee court had already decided similar
motions to remand); Medical Society of State of New York v. Connecticut General
Corp., 187 F.Supp.2d 89 (S.D.N.Y. 2001) (same); but see Shields v. Bridgestone/
Firestone, Inc., 232 F.Supp.2d 715 (E.D. Tex. 2002) (denying motion to stay and
deciding motion to remand in case pending MDL transfer); Good v. Prudential Ins. Co.
of America, 5 F.Supp.2d 804 (N.D. Cal. 1998) (same).

The jurisdictional issue in this case is whether the individual defendants, who are
current or former sales representatives for Wyeth, were fraudulently joined to defeat
federal subject matter jurisdiction. Motions to remand involving fraudulent joinder have
been addressed numerous times by the transferee court. See, e.g., In re Diet Drugs
Liability Litigation, ___ F.Supp.2d ___, 2003 WL 22931359 (E.D. Pa. July 30,
2003); id., 2003 WL 21973329 (E.D. Pa. June 12, 2003) (applying Alabama law to
case removed from Alabama state court); id. 220 F.Supp.2d 414 (E.D. Pa. 2002); id.
2000 WL 1886594 (E.D. Pa. Dec. 7, 2000); id. 2000 WL 217509 (E.D. Pa. Feb. 15,
2000); id. 1999 WL 554584 (E.D. Pa. July 16, 1999) (applying Alabama law to case
removed from Alabama state court); id. 1999 WL 554608 (E.D. Pa. June 29, 1999);
id. 1198 WL 254967 (E.D. Pa. Apr. 16, 1998). In fact, one of the transferee court's
orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical
sales representative in a case removed from Alabama state court. In re Diet Drugs
Liability Litigation, 2003 W. 21973329 (E.D. Pa June 12, 2003).

> In the interest of judicial economy and to avoid inconsistent results, the motion
> to stay is hereby GRANTED. This stay will remain in effect until the Court is notified of
> the MDL Panel's decision as to whether to transfer this action.

Id. at Doc. 12, Order dated February 13, 2004. The undersigned judge agrees with the reasoning of

the above quoted order and finds the analysis applicable to the instant case. Thus, the court finds it

appropriate to stay this case.

## CONCLUSION

For the above stated reasons, defendant's motion to stay (Doc. 3) is **GRANTED** and this

case is hereby **STAYED**. This stay will remain in effect until the court is notified of the MDL Panel's

decision as to whether to transfer this action.

**DONE and ORDERED** this 17th day of August, 2005.

_____/s/   Callie V. S. Granade_____
CHIEF UNITED STATES DISTRICT JUDGE



428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**(Cite as: 428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)))**

**C**

**Briefs and Other Related Documents**

United States Court of Appeals,
Eleventh Circuit.
Carl LEGG, Dorothy Legg, Plaintiffs-Appellees,
v.
WYETH, f.k.a. American Home Products
Corporation, Wyeth Pharmaceuticals, Inc.,
f.k.a. Wyeth-Ayerst Labs, Inc.,
Defendants-Appellants.
**No. 04-13489.**

Oct. 25, 2005.

**Background:** Alabama resident and his wife brought state court action against drug manufacturer and individual sales representatives, alleging that resident's use of anti-obesity drug caused him to develop valvular heart disease. Defendants obtained removal, alleging fraudulent joinder. The United States District Court for the Northern District of Alabama, No. 04-00435-CV-S-NE, C. Lynwood Smith, Jr., J., granted plaintiffs' motion to remand the case and ordered manufacturer to pay plaintiffs' costs and attorneys' fees due to improper removal. Manufacturer appealed.

**Holdings:** The Court of Appeals, Cox, Circuit Judge, held that:
(1) manufacturer's removal of action was not improvident and thus did not warrant award of attorneys' fees and costs, and
(2) district court was required to consider undisputed sworn affidavits submitted by manufacturer in support of removal.
Reversed.

West Headnotes

**[1] Removal of Cases** ☞107(9)

334k107(9) Most Cited Cases
Court of Appeals may review the merits of a remand order in considering whether the district court abused its discretion by awarding attorneys' fees and costs incurred as result of removal. 28 U.S.C.A. § 1447(c, d).

**[2] Removal of Cases** ☞107(9)
334k107(9) Most Cited Cases
While Court of Appeals may not review the decision to remand a case to state court, Court must, as part of its examination of an award of fees upon remand, consider the objective validity of the removing party's efforts, at the time that party attempted to remove the case. 28 U.S.C.A. § 1447(c, d).

**[3] Removal of Cases** ☞107(9)
334k107(9) Most Cited Cases
Court of Appeals reviews for abuse of discretion a district court's award of attorneys' fees and costs upon remanding a case to state court, and, because an error of law is an abuse of discretion, an award of attorneys' fees based on a legally erroneous remand order constitutes an abuse of discretion. 28 U.S.C.A. § 1447(c).

**[4] Federal Courts** ☞286.1
170Bk286.1 Most Cited Cases
Federal diversity jurisdiction requires complete diversity, in that the citizenship of every plaintiff must be diverse from the citizenship of every defendant. 28 U.S.C.A. § 1332.

**[5] Removal of Cases** ☞107(11)
334k107(11) Most Cited Cases
Drug manufacturer's removal of product liability action to federal court was not improvident, and thus did not warrant award of attorneys' fees and costs to plaintiffs upon remand, as manufacturer supported its removal of action with undisputed affidavits of defendant sales representatives who manufacturer claimed were fraudulently joined to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT
D

428 F.3d 1317                                                                                                    Page 2

428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**(Cite as: 428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)))**

defeat diversity jurisdiction, and there was no basis, under Alabama law, for imposing liability upon nondiverse sales representatives. 28 U.S.C.A. §§ 1332, 1447(c).

**[6] Removal of Cases ☞107(7)**
334k107(7) Most Cited Cases
District court was required to consider sworn affidavits submitted by defendant drug manufacturer in support of its removal of product liability action, based on manufacturer's claim of fraudulent joinder, where those affidavits were undisputed. 28 U.S.C.A. § 1447.

**[7] Removal of Cases ☞107(7)**
334k107(7) Most Cited Cases
In a proceeding to resolve a claim of fraudulent joinder, which is asserted as basis for removing action to federal court, the district court must resolve all questions of fact in favor of the plaintiff, but there must be some question of fact before the district court can resolve that fact in the plaintiff's favor; when affidavits submitted by defendants are undisputed by plaintiffs, the court cannot then resolve facts in plaintiff's favor based solely on unsupported allegations in complaint. 28 U.S.C.A. § 1447.

**[8] Fraud ☞30**
184k30 Most Cited Cases
Under Alabama law, those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith.

**[9] Products Liability ☞46.2**
313Ak46.2 Most Cited Cases
Under Alabama law, drug manufacturer's sales representative, who never promoted or sold particular drug used by plaintiff, could not be liable to plaintiff for negligent misrepresentation in connection with drug's alleged causation of plaintiff's valvular heart disease.

**[10] Corporations ☞336**
101k336 Most Cited Cases
To hold an employee of a corporation personally liable for the negligent acts of the corporation,

under Alabama law, there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is, he must be a participant in the wrongful act.

**[11] Removal of Cases ☞36**
334k36 Most Cited Cases
To negate a claim of fraudulent joinder, and support remand of action to state court, the potential for legal liability on part of the allegedly fraudulently joined defendant must be reasonable, not merely theoretical, and, in considering possible state law claims, "possible" must mean more than "such a possibility that a designated residence can be hit by a meteor tonight;" reason and common sense have some role. 28 U.S.C.A. § 1447.

*1318 Stephen Mann Brooks, Nelson, Mullins, Riley & Scarborough, L.L.P., Atlanta, GA, Robert D. Rosenbaum, Arnold & Porter, LLP, Washington, DC, for Defendants-Appellants.

*1319 Joseph A. Zarzaur, Jr., J. Phillip Warren, McKenzie, Taylor & Zarzaur, P.A., Pensacola, FL, for Plaintiff-Appellees.

Appeal from the United States District Court for the Northern District of Alabama.

Before EDMONDSON, Chief Judge, and BIRCH and COX, Circuit Judges.

COX, Circuit Judge:

**\*\*1** Plaintiffs, Dorothy and Carl Legg (the "Leggs"), filed a seven-count complaint in an Alabama state court against several defendants, including some Wyeth entities, Indevus Pharmaceuticals, Inc., and three Wyeth sales representatives. Wyeth removed this case to federal court, contending that the Plaintiffs fraudulently joined three of Wyeth's sales representatives as defendants in an effort to defeat federal diversity jurisdiction. On the Plaintiffs' motion, the court remanded the case, and ordered that Wyeth pay the Plaintiffs' attorneys' fees and costs under 28 U.S.C. § 1447(c) as Wyeth's removal had been "improper." (R.2-24 at 2.) Wyeth appeals the district court's order awarding attorneys' fees and costs to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**(Cite as: 428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)))**

Plaintiffs. We reverse.

## I. BACKGROUND & PROCEDURAL HISTORY

Carl and Dorothy Legg, citizens of Alabama, brought this action in the Circuit Court of Madison County, Alabama against Wyeth, a citizen of Delaware and New Jersey, Indevus Pharmaceuticals, Inc., a citizen of Delaware and Massachusetts, and three Wyeth sales representatives: Stacy Stubblefield, Michael Sullivan, and Betsy Weaver. Sullivan is alleged to be a citizen of Georgia; Stubblefield and Weaver are alleged to be citizens of Alabama. Carl Legg contends he took Wyeth's anti-obesity drug Redux and, as a result, developed valvular heart disease. Dorothy Legg claims loss of consortium.

Wyeth removed the matter to the United States District Court for the Northern District of Alabama. Wyeth alleged that federal jurisdiction was proper under 28 U.S.C. § 1332 (diversity jurisdiction), and that the Leggs fraudulently joined three sales representatives to destroy diversity. Wyeth attached affidavits of the sales representatives in support of its contention that the sales representatives were fraudulently joined. Wyeth then moved to transfer the case to the United States District Court for the Eastern District of Pennsylvania for consolidation with similar cases pending before the Multi-District Litigation Panel. Before reviewing that motion, the district court granted the Legg's motion to remand, concluding that diversity did not exist. The court found that the sales representatives were not fraudulently joined because there was a "possibility" that the Leggs could prevail in their claims against them. The court reached this conclusion on the face of the complaint, concluding that it could not consider the affidavits provided by Wyeth. The court also concluded that the Leggs stated a possible cause of action for innocent or negligent misrepresentation against Betsy Weaver, even if her affidavit was taken as true. In a separate order, the district court granted the Leggs attorneys' fees and costs in the amount of $1,982.49. Wyeth appeals the grant of attorneys' fees and costs.

## II. STANDARD OF REVIEW

**\*\*2** [1][2][3] We may review the merits of a remand order in considering whether the district court abused its discretion by awarding attorneys' fees and costs under 28 U.S.C. § 1447(c). *Fowler v. Safeco Ins. Co. of Am.,* 915 F.2d 616, 617 (11th Cir.1990). While 28 U.S.C. § 1447(d) bars our **\*1320** review of a remand as this one based on lack of subject matter jurisdiction, the statute does not "exclude the district court's assessment of costs from appellate review." *Id.* at 617. As the Fifth Circuit has explained, "[w]hile we may not review the decision to remand itself, we must, as part of our examination of the award of fees, consider the objective validity of the removing party's efforts, at the time that party attempted to remove the case." *Hornbuckle v. State Farm Lloyds,* 385 F.3d 538, 541 (5th Cir.2004). We review the district court's award of attorneys' fees and costs for an abuse of discretion. *Fowler,* 915 F.2d at 617. An error of law is an abuse of discretion. *Wexler v. Lepore,* 385 F.3d 1336, 1338 (11th Cir.2004). Therefore, an award of attorneys' fees based on a legally erroneous remand order constitutes an abuse of discretion.

## III. CONTENTIONS OF THE PARTIES

Wyeth contends on appeal that the district court erred in concluding that Wyeth's removal was improper, and therefore that no fees or costs should have been awarded the Leggs. Wyeth argues that the district court erred in refusing to consider unrebutted evidence submitted by it in support of removal. Wyeth also argues that the district court erred in concluding that the Leggs stated possible claims against Betsy Weaver based on innocent or negligent misrepresentation, even if her affidavit was taken as true. The Leggs defend the decision of the district court, and assert that the decision to award fees and costs was not an abuse of discretion, even if we would have decided the matter differently.

## IV. DISCUSSION

[4] This lawsuit by the Leggs is but one of thousands of cases brought by plaintiffs across the country who claim they suffer from valvular heart disease because they took one of Wyeth's diet drugs. [FN1] A common strategy employed by the plaintiffs in these cases is to name local parties,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317                                                                                            Page 4

428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**(Cite as: 428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)))**

often Wyeth's local sales representatives, as defendants, thus defeating Wyeth's right to remove a case to federal court. [FN2] The Multidistrict Litigation Court, which has overseen a large part of this litigation, concluded that this joinder can "only be characterized as a sham, at the unfair expense not only of [Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.,* 220 F.Supp.2d 414, 425 (E.D.Pa.2002). Indeed, there are dozens of district court decisions finding that Wyeth sales representatives were fraudulently joined as defendants to defeat federal *1321 diversity jurisdiction. [FN3] Wyeth contends that this is such a case.

FN1. These lawsuits were consolidated by the Judicial Panel on Multidistrict Litigation in the United States District Court of the Eastern District of Pennsylvania. A Nationwide Class Action Settlement Agreement was then executed by Wyeth and the diet drug plaintiffs. *See In re Diet Drugs,* Nos. 1203, 99-20593, 2000 WL 1222042, at *5 (E.D.Pa. Aug. 28, 2000). The Settlement Agreement permits Class Members who meet certain eligibility criteria to opt out and assert a claim against Wyeth in the tort system. The Leggs opted out of the Settlement Agreement. Wyeth estimates that approximately 50,000 plaintiffs have opted out and filed suit. Appellant Br. at 5.

FN2. Federal diversity jurisdiction under 28 U.S.C. § 1332 requires "complete diversity"--the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See, e.g., Palmer v. Hosp. Auth. of Randolph County,* 22 F.3d 1559, 1564 (11th Cir.1994).

FN3. For examples from this circuit, see *Clay v. Wyeth,* No. 5:04-cv-192-OC-10GRJ at 14 (M.D.Fla. Aug. 17, 2004) (magistrate judge's report and

recommendation noting that the plaintiff "has offered nothing--whether sworn or unsworn" to rebut the sworn statements made by the sales representative and concluding that Wyeth's removal of the case was proper); *Sobowski v. Wyeth,* No. 5:04-cv-96-Oc-10GRJ at 3-4 (M.D.Fla. June 24, 2004) (considering defendants' affidavits and finding that the evidence "does not give rise to a reasonable inference that the sales representatives knew or should have known of the drug's harmful effects" and that the representatives were "joined only to prevent removal"); *Davis v. Wyeth,* No. 4:03-cv-128 (CDL) at 13 (M.D.Ga. June 10, 2004) (concluding that plaintiff's evidence did not refute the defendants' "sworn affidavit statements that they had no knowledge that the diet drugs were linked to valvular heart disease," and finding that the joinder of the non-diverse defendants was fraudulent); *Fowler v. Wyeth,* No. 3:04-cv-83/MCR at 8-9 (N.D.Fla. May 14, 2004) (concluding that based on defendants' declarations that they did not sell the diet drug, plaintiffs could not maintain any of their asserted causes of action; also noting that once "Wyeth presented the declarations to the Court, Plaintiffs could not continue to rely upon their unsupported allegations in the complaint"); *Lewis v. Wyeth,* No. 3:04-cv-81/MCR at 8 (N.D.Fla. Apr. 29, 2004) (similarly concluding that the sales representative's "uncontroverted declaration is sufficient to demonstrate that he was fraudulently joined in this lawsuit"); *Petty v. Wyeth,* No. 3:04-cv-82/MCR at 8-9 (N.D.Fla. Apr. 28, 2004) (finding that the "uncontroverted declarations of [the sales representatives] are sufficient to demonstrate that they were fraudulently joined in this lawsuit").

The Leggs named three local sales representatives as defendants in this case. Michael Sullivan, the first sales representative named as a defendant in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this suit, submitted an affidavit to the district court stating that he is "a citizen and resident of the State of Georgia." (R.1-1 at Ex. B.) If that is true, Sullivan's presence would not defeat diversity jurisdiction. The second sales representative, Stacy Stubblefield, claims he never sold Redux. In his affidavit, Stubblefield swore that he "never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted Pondimin or Redux, or trained [ ] anyone to do so." (R.1-1 at Ex. B.) Finally, the third sales representative, Betsy Weaver, admitted that she "promoted Redux to licensed healthcare providers and answered their questions about the drug based on information provided to me by Wyeth." (*Id.*) However, Weaver asserts that she had no knowledge of Redux's alleged association with valvular heart disease until the allegation was first publicized:

**3 My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. Wyeth provided me with the FDA-approved package inserts and other information regarding the drugs I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and had no control over content or other written warnings.

I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

I was not aware of any alleged association between Pondimin and/or Redux and valvular heart disease until the time such an allegation was first publicized. I was not aware before that time of any published study, report or other literature which claimed that an association exists between Pondimin and/or Redux and valvular heart disease.

*1322 (*Id.*) Wyeth attached these three affidavits as exhibits to its notice to remove this case to federal court. In the notice of removal, Wyeth alleged that the action could have originally been filed in federal court because complete diversity of citizenship exists between the properly joined

parties, and that the three sales representatives were fraudulently joined.

In response to the sales representatives' affidavits, the Plaintiffs did not dispute Sullivan's sworn statement that he was a citizen of Georgia, nor did they respond to Stacey Stubblefield's sworn statement that he never promoted or sold Redux. In an effort to rebut Weaver's sworn statement that she did not know of Redux's alleged connection with valvular heart disease, the Plaintiffs pointed out to the district court that all of Wyeth's sales representatives had to participate in a Sales Training Program. The Plaintiffs submitted to the court a copy of Wyeth's Sales Training Program. (R.2-14 Ex. B.) But the document does not contain any warning to the sales representatives that Redux may cause valvular heart disease. Nor does the corresponding package insert, provided as a part of the Sales Training Program, provide any warning to the sales representatives that Redux may cause valvular heart disease. Thus, the material the Plaintiffs submitted to the court in fact reinforces Weaver's sworn statement that she was never told by the company that Redux may cause valvular heart disease and did not learn of the risk until it first became publicly known. [FN4]

> FN4. Not only did the Plaintiffs fail to dispute Weaver's sworn statement that she did not know that Redux may cause valvular heart disease, the Plaintiffs also failed to show that Weaver had ever promoted or sold the drug to Carl Legg's prescribing physician. Legg's prescribing physician was not identified in the complaint. (R.1-1 Ex. A.) The Plaintiffs did submit affidavits from four other physicians, but none of these doctors were Legg's prescribing physician, nor did they have any connection to this case. (R.2-14 Ex. A.)

The district court refused to consider the affidavits by the sales representatives. Instead, the court concluded that the Plaintiffs stated a possible cause of action for fraud against both Stubblefield (who said he never sold the drug) and Weaver (who sold

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**(Cite as: 428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)))**

it, she said, not knowing it could be dangerous). The court reasoned that the questions of whether the individual defendants "actually sold or promoted Redux, and whether the individual defendants actually conveyed incorrect or misleading information to [P]laintiff Carl Legg's healthcare providers, both go to the merits of plaintiffs' claims." (R.2-19 at 10.) In reaching its conclusion that the Plaintiffs stated a possible cause of action against the sales representatives, the district court relied solely on various allegations in the Plaintiffs' complaint. (R.2-19 at 9-11.)

**\*\*4** [5] We conclude that Wyeth's efforts to remove this case to federal court were objectively valid and reasonable. "Costs are assessed in a case of 'improvident removal.' " *Fowler,* 915 F.2d. at 618. This is not a case of improvident removal. Wyeth presented the court with affidavits from its sales representatives to establish that they were fraudulently joined. The district court erred in refusing to consider these affidavits.

[6][7] We have explained before that "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*" *Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1380 (11th Cir.1998) (emphasis added). The proceeding appropriate "for resolving a claim of fraudulent joinder is similar to \*1323 that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)." *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997) (quoting *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 n. 9 (5th Cir. Unit A 1981)). In such a proceeding, the district court must "resolve all questions of fact ... in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989). But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor. In this case, for example, the Plaintiffs did not dispute that Stubblefield's sworn statement that he never promoted or sold the drug Redux. With no response from the Plaintiffs, there was no question of fact for the court to resolve. The same goes for Weaver,

who asserted that she did not know Redux may cause valvular heart disease. The Plaintiffs offered no evidence to dispute this sworn statement. When the Defendants' affidavits are undisputed by the Plaintiffs, the court then cannot resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint. As the Fifth Circuit has explained:

> While such a procedure requires that all *disputed* questions of fact be resolved in favor of the nonremoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment motion:
>
> **\*\*5** [W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*

*Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 393-94 (5th Cir.2000) (emphasis in original) (internal citations omitted).

In ignoring the Defendants' affidavits in this case, the district court relied on our holding in *Crowe v. Coleman,* 113 F.3d 1536 (11th Cir.1997). *Crowe,* however, did not preclude relying on affidavits in resolving a question of fraudulent joinder. In fact, in *Crowe,* as in our other cases addressing fraudulent joinder, we found it entirely proper for the district court to consider affidavits submitted by the defendants. *See id.* at 1538 (In considering a removal alleging fraudulent joinder, "the court may consider affidavits and deposition transcripts submitted by the parties."). The defendants' affidavits in *Crowe* were properly before the district court, and "we [took] them into account in deciding the limited question of whether a possibility exists that Plaintiffs have stated a ... cause of action against Coleman." *Id.* at 1541. The district court erred in *Crowe* because it resolved the case in the defendants' favor when there were sworn statements submitted by *both* the defendants and the plaintiffs. In the case at bar, the Defendants submitted sworn

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

affidavits that were undisputed and, in such a case, a court cannot resolve the question of fraudulent joinder by refusing to consider the defendants' submissions. But that is clearly what the district court did. In doing so, the district court committed a legal error, and a legal error is an abuse of discretion. *See Wexler,* 385 F.3d at 1338.

[8] The district court articulated another reason for ignoring Weaver's affidavit and remanding the case to state court. The district court reasoned that even if Weaver had no pre-publicity knowledge that Redux may cause valvular heart disease, she might still be liable in Alabama courts for innocent or negligent misrepresentation. But on this record, this conclusion *1324 has no support in Alabama law. In *Fisher v. Comer Plantation, Inc.,* 772 So.2d 455 (Ala.2000), the Alabama Supreme Court held that "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith." *Id.* at 463. Assuming that Weaver innocently passed on incorrect information about Redux to Carl Legg's physician, under *Fisher* she could not be liable for innocent misrepresentation. *See also Montgomery Rubber & Gasket Co. v. Belmont Mach. Co.,* 308 F.Supp.2d 1293, 1298 (M.D.Ala.2004) ("At most, [plaintiff] alleges that [defendant agent] was an innocent conduit through which [defendant seller] defrauded [plaintiff]. As [the defendant agent] correctly notes, forwarded information that is incorrect cannot form the basis of liability unless the information was relayed in bad faith.") (citing *Fisher,* 772 So.2d at 463).

[9] The Plaintiffs, in their complaint, allege that "[e]ach of the [d]efendants negligently and recklessly represented ... that Redux was safe to ingest and that the utility of Redux outweighed any risk in use for the intended purpose of weight loss or control." (R.1-1 Ex. A. at ¶ 83.) Astonishingly, the Plaintiffs make this allegation against *all* the individual Defendants, including Stacy Stubblefield, who swore under oath that he never promoted or sold Redux. This sworn statement was never disputed by the Plaintiffs. With no evidence that Stubblefield had anything to do with Redux, there is

no reasonable possibility that Plaintiffs can establish a cause of action against him for negligent misrepresentation under Alabama law.

**\*\*6** [10] Nor is there any reasonable possibility, based on this record, that Plaintiffs can establish a cause of action for negligent misrepresentation against Betsy Weaver. The Alabama Supreme Court has adopted the Restatement (Second) of Torts § 552 (1997) as the law of Alabama in cases involving negligent misrepresentation. *Fisher,* 772 So.2d at 461 (citing *Boykin v. Arthur Andersen & Co.,* 639 So.2d 504, 509-10 (Ala.1994)). In applying the elements of the claim from the Restatement, Alabama's Supreme Court instructs that liability for negligent misrepresentation is "predicated upon the existence of a duty." *Fisher,* 772 So.2d at 463 (citing *Colonial Bank of Alabama v. Ridley & Schweigert,* 551 So.2d 390, 395 (Ala.1989)). To hold an employee of a corporation personally liable for the negligent acts of the corporation, "there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." *Crigler v. Salac,* 438 So.2d 1375, 1380 (Ala.1983) (quoting *Fletcher's Cyclopedia of Corporations* § 1137 at 208 (1975)); *see also Turner v. Hayes,* 719 So.2d 1184, 1188 (Ala.Civ.App.1997) ("[C]orporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort.").

[11] Plaintiffs have not presented any evidence that Weaver knew of any valvular heart disease risk, nor have Plaintiffs presented any evidence to support the allegation that Weaver should have known of this risk. Without this evidence, there is no reasonable possibility that an Alabama court would conclude that Weaver personally breached a duty to the Plaintiffs. If Wyeth knew or should have known of Redux's harmful effects and did not tell Weaver, that might be a basis for a claim against Wyeth, but it would not support the conclusion that Weaver herself "personally participated in the tort" or breached a duty to the Plaintiffs. *See Turner,* 719 So.2d at 1188. Quite simply, there is no reasonable basis to predict that an Alabama court would find

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317                                                                                      Page 8

428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**(Cite as: 428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)))**

Weaver, as an individual employee, personally liable for any *1325 wrongful action by Wyeth in the absence of evidence that Weaver either knew or should have known of Redux's allegedly dangerous effects. [FN5]

> FN5. The potential for legal liability "must be reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002). In considering *possible* state law claims, possible must mean "more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Braden v. Wyeth,* CV-04-PT-235-E (N.D. Ala. June 30, 2004). Without any evidence that Weaver knew or should have known Redux was dangerous, it is hard to conclude, applying reason and common sense, that the Plaintiffs have a viable claim against her under Alabama law.

The removal process was created by Congress to protect defendants. Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.,* 955 F.2d 924, 928 (4th Cir.1992) (quoting *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.,* 713 F.Supp. 185, 189 (W.D.N.C.1989)). As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Wecker v. Nat'l Enameling & Stamping Co.,* 204 U.S. 176, 186, 27 S.Ct. 184, 188, 51 L.Ed. 430 (1907). Given that the record supports Wyeth's allegation that these sales representatives were fraudulently joined by the Plaintiffs, there was nothing "improvident" or unreasonable in Wyeth's effort to remove this case to federal court. *See Fowler,* 915 F.2d. at 616. Thus, the district court abused its discretion in awarding attorneys' fees and costs to the Plaintiffs.

V. CONCLUSION

**\*\*7** The judgment of the district court awarding the Leggs attorneys' fees and costs is REVERSED.

428 F.3d 1317, 2005 WL 2756717 (11th Cir.(Ala.)), 18 Fla. L. Weekly Fed. C 1054

**Briefs and Other Related Documents (Back to top)**

• 04-13489 (Docket) (Jul. 15, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MAY,            ) | |
|            ) | |
|     Plaintiff,        ) | |
|            ) | |
| v.                    ) | CASE NUMBER: 3:05-cv-998-F |

MICHAEL MAY,                          )

    Plaintiff,                    )

v.                                    )  CASE NUMBER: 3:05-cv-998-F
                                      )
MERCK & CO., INC., a foreign or       )
domestic corporation, ROBERT M.       )
WALL, GARY HARLAN, HAL                )
HENDERSON, STEVE SANTOS,              )  Removed from the Circuit Court
PATRICIA AIKEN, MATTHEW               )  of Randolph County, Alabama,
KING, ANGELA FINCH, SONYA             )  CV-05-149
COLEY, JASON DELK, and the            )
Defendants A, B, C, D, E, X & Z       )
whether singular or plural, being those )
persons, firms or entities who or which )
proximately caused or contributed to  )
the Plaintiff's personal injury and   )
Plaintiff's other harm and the other  )
damages as complained of herein whose )
true names are unknown to the Plaintiff )
but will be added by amendment when    )
correctly ascertained,                 )
                                       )
    Defendants.

## AMENDED DECLARATION OF PATRICIA AIKEN

    1.      My name is Patricia Aiken.  I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration.  This Declaration is based

upon my personal knowledge.

    2.      At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Michael May.



3.    I am not a physician and accordingly have never prescribed Vioxx. I am also not a pharmacist and therefore have never filled a Vioxx prescription as a pharmacist. The information I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses or courses of treatment.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Michael May.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Michael May.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December _7_, 2005.

_____
Patricia Aiken

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER: 3:05-cv-998-F |
| | ) | |
| MERCK & CO., INC., a foreign or | ) | |
| domestic corporation, ROBERT M. | ) | |
| WALL, GARY HARLAN, HAL | ) | |
| HENDERSON, STEVE SANTOS, | ) | |
| PATRICIA AIKEN, MATTHEW | ) | |
| KING, ANGELA FINCH, SONYA | ) | |
| COLEY, JASON DELK, and the | ) | |
| Defendants A, B, C, D, E, X & Z | ) | |
| whether singular or plural, being those | ) | |
| persons, firms or entities who or which | ) | |
| proximately caused or contributed to the | ) | |
| Plaintiff's personal injury and Plaintiff's | ) | |
| other harm and the other damages as | ) | |
| complained of herein whose true names | ) | |
| are unknown to the Plaintiff but will be | ) | |
| added by amendment when correctly | ) | |
| ascertained, | ) | |
| | ) | |
| Defendants. | | |

## AMENDED DECLARATION OF MATTHEW KING

1.      My name is Matthew King. I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration. This Declaration is based

upon my personal knowledge.

2.      At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Michael May.

1

3.    I am not a physician and accordingly have never prescribed Vioxx. I am also not a pharmacist and therefore have never filled a Vioxx prescription as a pharmacist. The information I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses or courses of treatment.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Michael May.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Michael May.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December ⎯8⎯, 2005.

Mathew King

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MICHAEL MAY,                                    )
                                                )
    Plaintiff,                              )
                                                )
v.                                              )   CASE NUMBER: 3:05-cv-998-F
                                                )
MERCK & CO., INC., a foreign or                 )
domestic corporation, ROBERT M.                 )
WALL, GARY HARLAN, HAL                          )
HENDERSON, STEVE SANTOS,                        )   Removed from the Circuit Court
PATRICIA AIKEN, MATTHEW                         )   of Randolph County, Alabama,
KING, ANGELA FINCH, SONYA                       )   CV-05-149
COLEY, JASON DELK, and the                      )
Defendants A, B, C, D, E, X & Z                 )
whether singular or plural, being those         )
persons, firms or entities who or which         )
proximately caused or contributed to the        )
Plaintiff's personal injury and Plaintiff's     )
other harm and the other damages as             )
complained of herein whose true names           )
are unknown to the Plaintiff but will be        )
added by amendment when correctly               )
ascertained,                                    )
                                                )
    Defendants.                             )

## AMENDED DECLARATION OF ROBERT WALL

    1.    My name is Robert Wall. I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration. This Declaration is based

upon my personal knowledge.

    2.    At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Michael May.

    3.    I am not a physician, and have therefore never prescribed Vioxx.

While I am a registered pharmacist, I did not practice as a pharmacist during the time that

Vioxx was on the market and consequently never wrote or filled a prescription for Vioxx as a pharmacist during that time. While I learned about COX-2 inhibitors from continuing education courses, the information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4. At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses or courses of treatment.

5. At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would

not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Michael May.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Michael May.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 7, 2005.

_____
Robert Wall

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER: 3:05-cv-998-F |
| ) | |
| MERCK & CO., INC., a foreign or ) | |
| domestic corporation, ROBERT M. ) | |
| WALL, GARY HARLAN, HAL ) | |
| HENDERSON, STEVE SANTOS, ) | Removed from the Circuit Court |
| PATRICIA AIKEN, MATTHEW ) | of Randolph County, Alabama, |
| KING, ANGELA FINCH, SONYA ) | CV-05-149 |
| COLEY, JASON DELK, and the ) | |
| Defendants A, B, C, D, E, X & Z ) | |
| whether singular or plural, being those ) | |
| persons, firms or entities who or which ) | |
| proximately caused or contributed to the ) | |
| Plaintiff's personal injury and Plaintiff's ) | |
| other harm and the other damages as ) | |
| complained of herein whose true names ) | |
| are unknown to the Plaintiff but will be ) | |
| added by amendment when correctly ) | |
| ascertained, ) | |
| ) | |
| Defendants. | |

## AMENDED DECLARATION OF GARY HARLAN

1.     My name is Gary Harlan. I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration. This Declaration is based

upon my personal knowledge.

2.     At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Michael May.

3.     I am not a physician and accordingly have never prescribed Vioxx.

I am also not a pharmacist and therefore have never filled a Vioxx prescription as a

pharmacist. The information I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians regarding Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding the drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called, and I had no knowledge or information of any of those patients' medical histories, symptoms, prognoses or courses of treatment.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment, and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Michael May.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Michael May.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December _8_, 2005.

_____
Gary Harlan