## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 3:05-cv-00998-** |
| | ) | **MEF-SRW** |
| MERCK & CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT MERCK & CO., INC.'S OPPOSITION
## TO PLAINTIFF'S MOTION TO REMAND

Plaintiff has sought to evade federal jurisdiction by joining his product liability claims against Merck & Co., Inc. ("Merck") -- which meet all of the requirements for federal diversity jurisdiction – with claims against in-state professional representatives that are not cognizable under Alabama law. Plaintiff is also asking this Court to expend its judicial resources addressing issues that should and will be decided by the Vioxx® MDL court. As set forth below and in Defendant's prior Motion for Stay and Defendants' Response to Plaintiff's Opposition to Motions to Dismiss, the Court should defer consideration of Plaintiff's Motion to Remand pending MDL transfer. However, if the Court chooses to consider Plaintiff's Motion to Remand rather than staying the case, the Court should deny the motion because the non-diverse defendants are fraudulently joined.

## BACKGROUND

This lawsuit concerns Plaintiff Michael D. May's use of the prescription medication Vioxx, a pharmaceutical manufactured, marketed, and distributed by Merck. In an attempt to defeat diversity jurisdiction, Plaintiff named as defendants nine individual Merck employees (Robert M. Wall, Gary Harlan, Hal Henderson, Steve Santos, Patricia Aiken, Matthew King, Angela Finch, Sonya Coley, and Jason Delk) (the "professional representatives").[1]    Plaintiff alleges that five of these professional representatives, Steve Santos, Hal Harrison, Angela Finch, Matthew King, and Sonya Coley, are residents of the State of Alabama, and thus, non-diverse.

On October 19, 2005, Defendant timely removed this case to federal court based upon federal diversity jurisdiction and moved for a stay of all proceedings pending MDL transfer.  Removal was appropriate because there is complete diversity of citizenship between the Plaintiff and the properly joined defendants, and the amount in controversy satisfies the jurisdictional minimum. *See* 28 U.S.C. § 1332.  Thus, removal was proper and Merck has satisfied all the procedural requirements for removal. *See* Notice of Removal.

Because Plaintiff's remand motion was filed more than 30 days after the case was removed to this Court, Plaintiff has waived his right to object to any procedural deficiency in the removal.  28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").  Thus, the only issues before the Court are whether this Court or the MDL Court should rule on

---

[1] However, only Patricia Aiken, Matthew King, Gary Harlan, and Robert Wall were served.  Upon information and belief, Jason Delk, Hal Henderson, Steve Santos, Angela Finch, and Sonya Coley have not yet been served.

Plaintiff's motion and whether Plaintiff's manipulative pleadings are sufficient to defeat federal jurisdiction.

## ARGUMENT

Plaintiff's characterization of his remand motion as an "emergency" and his request for an expedited hearing are precisely backwards. Rather than rush to hear the motion for remand as suggested by the plaintiff, Merck respectfully suggests the Court should defer consideration of the motion pending MDL transfer – the course taken by courts around the country in more than 200 Vioxx-related cases in which plaintiffs moved to remand – because the MDL court is already facing motions raising precisely the same issues under Alabama law as Plaintiff's motion here. Deferring consideration of Plaintiff's motion pending MDL transfer will thus promote the purposes of the MDL proceeding – judicial efficiency and consistent rulings. If the Court does rule on the merits of Plaintiff's motion prior to MDL transfer, remand should be denied because all of the properly joined parties are diverse and the jurisdictional threshold is satisfied.

## I. The Court Should Refrain From Ruling On Plaintiff's Motion For Remand And Should Stay All Proceedings In This Case.

As a threshold matter, the Court should refrain from ruling on Plaintiff's motion to remand pending its likely transfer to *In re VIOXX Producs Liab. Litig.*, No. 1657, the MDL proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from Vioxx (the "Vioxx cases"). *See In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). On October 25, 2005, Merck notified the Panel of this case as a potential "tag-

3

along action" to the MDL proceeding, and the case has been identified by the JPML as one that appears appropriate for transfer to the MDL by its inclusion in a conditional transfer order. *See* Exhibits A and B, attached hereto.

Both the MDL Panel and the MDL judge presiding over Vioxx litigation have made clear their preference that overlapping remand issues be addressed in the Vioxx MDL proceeding rather than by transferor judges. *See* Ltr. From JPML to Hon. Ricardo H. Hinojosa, attached as Exhibit C ("wait[ing] until the Panel has decided the transfer issue . . . may be especially appropriate if the [remand] motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization"). As Judge Fallon put it at a June 23, 2005 status conference in the Vioxx proceeding:

> There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency. The [r]ule of [l]aw is really based on consistency. If different decisions are made by numerous judges, then you have no consistency and no predictability and no one knows exactly what to do or how to do it. It's easier if one court decides some of these matters than if 50 or 100 courts decide the matter.

Transcript of June 23, 2005 Status Conference before the Honorable Eldon E. Fallon, attached as Exhibit D.

Numerous courts around the country have agreed, staying more than 200 Vioxx case with pending remand motions. *See, e.g., Jones v. Merck & Co., et al.,* CV-05-427-RDP (N.D. Ala. April 25, 2005), attached as Ex. E (stayed with motion to remand pending and over objection of plaintiff's counsel); *Woods v. Merck & Co., et al.,* CV-05-0425-LG-M (S.D. Ala. Aug. 17, 2005), attached as Ex. F (same).

4

Deferral is particularly appropriate here because numerous cases have been transferred to the Vioxx MDL proceeding in which plaintiffs have named non-diverse sales representatives and seek remand on that basis. Because Judge Fallon is already facing remand motions in similar cases, Merck respectfully urges the Court to defer consideration of Plaintiff's motion pending final MDL transfer.

## II.    The Court Has Diversity Jurisdiction Over Plaintiff's Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.

Should the Court choose to reach the merits of Plaintiff's Motion For Remand, the motion should be denied because the Court has diversity jurisdiction over Plaintiff's claims. Plaintiff does not dispute in his remand motion that the amount-in-controversy requirement is satisfied, and thus, the only question facing the Court is whether the non-diverse professional representatives are fraudulently joined. As set forth below, Plaintiff has no intention of seeking relief from these defendants; nor could he if he so desired. Accordingly, these defendants must be ignored for purposes of determining jurisdiction.

As the United States Supreme Court has long recognized, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). The doctrine of fraudulent joinder is designed to prevent plaintiffs from naming parties of the same citizenship merely to avoid removal of an action to federal court. *See Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003). "As the Supreme Court long ago admonished, 'the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed to federal court.'" *Legg v.*

5

*Wyeth*, ___ F.3d ___, 2005 WL 2756717 (11th Cir. Oct. 25, 2005) (*quoting Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)) (Attached as Exhibit G).

A defendant is fraudulently joined when there is "no reasonable basis for predicting" that a state might impose liability on the resident defendant. *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). Such a "reasonable basis" must be based on facts in evidence and cannot be "merely theoretical." *Legg*, 2005 WL 2756717 at *6 and n.5. In making this determination, this Court should determine its jurisdiction over the case "based upon the plaintiff's pleadings at the time of removal." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (emphasis added).

Here, Plaintiff alleges nine causes of action – AEMLD and strict liability, negligence and wantonness, negligence per se, unjust enrichment, breach of express warranty, breach of implied warranty, corporate responsibility: joint ventures, parent/subsidiaries, and/or successor corporation, civil conspiracy, and fraud and deceit. As set forth below, Plaintiff has no reasonable possibility of prevailing on any of these causes of action. First, Plaintiff cannot establish knowledge, bad faith, or reliance as required for the fraud claims. Second, professional representatives cannot be held liable under the AEMLD and strict liability, and breach of warranty claims because those causes of action only exist against "sellers", which by definition does not include professional representatives. Third, individual employees are not liable under Alabama law for negligence or wantonness under these circumstances as the claims are barred by the learned intermediary doctrine. Last, Plaintiff's remaining claims for corporate responsibility, civil conspiracy, and unjust enrichment cannot defeat removal because

they are substantively unsupportable and are alleged in a wholly conclusory manner.[2]

Accordingly, the individual defendants are fraudulently joined and their citizenship

should be ignored for diversity purposes.

### A. Plaintiff's Fraud Claim Fails Under *Legg v. Wyeth* Because Plaintiff Has Failed To Establish Knowledge Or Bad Faith On The Part Of The Professional Representatives.

The Eleventh Circuit's recent holding in *Legg v. Wyeth* confirms that Plaintiff has

no reasonable possibility of prevailing on his fraud claim against the professional

representatives because Plaintiff has failed to establish knowledge or bad faith on the part

of the professional representatives. In *Legg*, plaintiffs Carl and Dorothy Legg asserted

numerous claims against Wyeth, a pharmaceutical manufacturer, and several of its

professional representatives, including claims for fraud based on allegations that the

defendants made misrepresentations and suppressed certain facts related to the Wyeth

medicine, Redux. Wyeth removed the case on diversity grounds, arguing that the Leggs

had fraudulently joined a non-diverse professional representative. Wyeth supported its

removal with the affidavits of its non-diverse professional representatives, which stated in

pertinent part:

> My knowledge of the drugs I detailed was derived exclusively from
> education provided to me by Wyeth. . . . I had no involvement in the
> development or preparation of package inserts for any of the drugs, and
> had no control over content or other written warnings. . . . I was not
> expected, as a field sales representative, to conduct independent research
> regarding the drugs I detailed, and did not do so. I was not expected to,
> and did not, review independent scientific studies published in journals
> unless they were supplied to me by Wyeth.

---

[2] Plaintiff has acknowledged many of his claims against the professional representatives are not viable by his decision not to contest the professional representatives' motions to dismiss as they apply to all claims except for fraud.

*Legg*, 2005 WL 2756717 at *3. In response to Wyeth's submission, the Leggs simply offered certain training materials used by Wyeth and its professional representatives and otherwise rested on the allegations in the Complaint.

In addressing the district court's remand of the case in light of the evidence, the Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the professional representative], as an individual employee, personally liable for any wrongful action by Wyeth in the absence of evidence that [the professional representative] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at *6. The Court explained that when the defendant presents evidence such as declarations that are not disputed by Plaintiff, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.* at *4. Thus, the Eleventh Circuit found the remand had been improvidently granted, noting that "the Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Id.* at *6 (quoting *Wecker v. Nat'l Enameling and Stamping Co.,* 204 U.S. 176, 186 (1907)).

As with the professional representative in *Legg*, the professional representatives in this case have submitted declarations stating unequivocally that

> The information I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with the physicians regarding Vioxx. I had no involvement in the development of preparation of prescribing information for Vioxx, I did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a professional representative, to conduct independent research regarding drugs I detailed. I was not expected to

> review independent scientific studies published in journals unless Merck
> supplied them to me.
>
> I made no knowing misrepresentations concerning the safety or efficacy of
> Vioxx and acted in good faith at all times in my dealings with physician
> who may have prescribed Vioxx.

*See* Declarations of professional representatives, attached as Exhibit H.

Like the Plaintiffs in *Legg*, the Plaintiff in this case has not offered any evidence to dispute the testimony offered by the professional representatives that they did not have any independent knowledge of any alleged misrepresentations. Rather, like the Plaintiffs in *Legg*, the Plaintiff here has only attached various documents and training materials supporting general allegations against Merck, none of which establish either the knowledge or bad faith elements of a fraud claim against these professional representatives.

The decision in *Legg* confirms long-standing Alabama law in its treatment of actionable misrepresentations and the requirement of knowledge. 2005 WL 2756717 at *6 (stating "there is no reasonable basis to predict that an Alabama Court would find [the professional representative], as an individual employee, personally liable for any wrongful action by [his company] in the absence of evidence that [he] knew or should have known of [the medication's] allegedly dangerous effects"). An essential element of Plaintiff's fraudulent misrepresentation claim is that the professional representatives *knew* of the alleged falsity of their representations. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002) (discussing elements of fraud claims under Alabama law). Here, Plaintiff offers only the conclusory allegation that all the professional representatives "were not acting as mere conduits, because they had knowledge that the information conveyed to each opinion leader, consumer, the public and to each of

Plaintiff's physician, was false." Complaint ¶ 121. Addressing complaints with similarly conclusory allegations of knowledge on the part of professional representatives, the Rezulin MDL judge held that such allegations were insufficient to warrant remand. *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001). Those allegations do not satisfy an "essential element[] of fraud, most obviously that the sales professionals knew that Rezulin was unsafe at the time they spoke but withheld the truth to mislead plaintiffs." *Id.* at 283 & 284 n.29 (*citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (to satisfy knowledge requirement of fraud claim, plaintiff must allege circumstances to show that defendants knew their representations were false when made)).[3]

As the Rezulin MDL Court held, remand should be denied where, as here, plaintiffs "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants.'" *Id.* at 283. Indeed, the Rezulin MDL Court subsequently denied remand in two actions naming a professional representative based on the conclusory claims against her and plaintiffs' failure to refute her affidavit. *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001); *see generally Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal").

---

[3] Although these quotations are contained in the section of the opinion dealing with two fraudulent joinder cases from Mississippi, the Court also applies this reasoning to the Alabama cases later in the opinion saying "the Alabama complaint suffers from the same defect as the Mississippi cases joining sales professionals . . ." *Id.* at 286.

Like the professional representatives in *Legg*, the professional representatives here did not make any knowing misrepresentations to physicians about Vioxx. *See* Declarations of professional representatives. The information used by the professional representatives in their dealings with physicians about Vioxx came from their employer. *See id.* The professional representatives did not draft the prescribing information or warnings and had no responsibility to conduct independent research. *See id.* They acted in good faith at all times with physicians who prescribed Vioxx. *See id.*; *see also Legg*, 2005 WL 2756717 at *3, *6. As a result, the uncontested fact is that the professional representatives can only be considered "conduits" through which *allegedly* incorrect information from their employer was supplied to third parties. As such, they cannot be held liable for fraud. *See Legg*, 2005 WL 2756717 at *5 (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)) (stating "'those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith'"). Without evidence that the professional representatives made knowing misrepresentations to the physicians or acted in bad faith, there is "no reasonable possibility" that an Alabama court would conclude that the professional representatives breached a duty to Plaintiff. *See Legg*, 2005 WL 2756717 at *6.

For this reason, Plaintiff cannot maintain a claim for fraud against the individual professional representatives. Therefore, Plaintiff's Motion For Remand is due to be denied under the authority of *Legg*.

**B. Plaintiff's Claims For Fraud Also Fail Because He Fails To Demonstrate Reliance By Plaintiff Or His Physician And His Claims Are Barred By The Learned Intermediary Doctrine.**

Plaintiff's fraud claim against the professional representatives fails for other reasons as well. First, an essential element of these claims is reliance on the alleged misrepresentation. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression). Yet Plaintiff only summarily alleges that he and his physician relied on the professional representatives' alleged misrepresentations in prescribing Vioxx to Plaintiff. Complaint ¶ 110. The professional representatives have never met nor spoken with Plaintiff. *See* Declarations of professional representatives. In fact, Plaintiff fails to even identify his physician or establish that any of the professional representatives had any contact with his physician. Likewise, Plaintiff fails to allege that his physician relayed any misinformation to him or that he was even aware of the alleged statements made to the prescribing physician. Without some evidence or specific allegation that Plaintiff or his physician relied on an alleged misrepresentation by these professional representatives, these claims must fail for lack of requisite reliance.

Furthermore, even if Plaintiff could establish a misstatement was made to his physician, Plaintiff's physician in this case is presumably a licensed physician with extensive training, and makes his or her own determination regarding medication and treatment of his or her patients.[4] As such, the learned intermediary doctrine bars Plaintiff's claims against the individual defendants for an alleged failure to disclose. *Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984) (observing that the prescribing physician is best suited to evaluate the characteristics of the medication

---

[4] The identity of Plaintiff's physician is noticeably absent from the complaint in this case.

12

vis-à-vis the needs and background of the patient and concluding that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer"); *see also Morguson v. 3M Co.*, 857 So. 2d 796, 801-02, n.1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warnings are too complex to be fully appreciated by the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000)).

### C. Plaintiff's Claims Against The Professional Representatives For Fraud Do Not Satisfy The Particularity Requirement Of Rule 9(b).

Finally, Plaintiff cannot establish claims of fraud and deceit against the professional representatives because he has failed to plead with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure. The rules are identical, and both call for dismissal if averments of fraud are not stated "with particularity." Here, Plaintiff fails to show the "time, place and purported contents of the false representations" allegedly made by the professional representatives as required by the rule and also fails to identify the physician to whom any allegedly fraudulent statements were made. *Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995); *see* Ala. R. Civ. P. 9(b) (Committee Comments on 1973 Adoption, subdivision (b)) (plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and the identification of what has been obtained").

Plaintiff goes to great lengths to describe the marketing campaign for Vioxx, but fails to state how, when, where, and most importantly, *if* Plaintiff heard of this campaign. Nor does Plaintiff state when, where, or even *if* Plaintiff's physician allegedly received

13

this information or, most importantly, if his or her prescribing decisions were affected in any way by this information. Plaintiff has offered nothing to demonstrate that the professional representatives even called on his treating or prescribing physician. The fact that Plaintiff's counsel has possession of Merck's marketing materials produced in other Vioxx cases does not link those marketing materials to the prescription of Vioxx written for Plaintiff. Further, a detailed description of these materials without details regarding if and how they were presented to the prescribing physician, or, more importantly, to Plaintiff does not satisfy the requirements of Rule 9(b).[5] *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b) and supported finding of fraudulent joinder).[6] Here, the professional representatives have never met nor spoken to Plaintiff and Plaintiff has failed to show that the professional representatives ever promoted Vioxx to his prescribing physician. *See Legg*, 2005 WL 2756717 at *3 n.4; Declarations of professional representatives.

In short, Plaintiff's complaint falls far short of the heightened pleading standard for fraud, and as numerous courts have recognized, his motion for remand should be denied and Defendants' Motions to Dismiss should be granted on this ground as well.

---

[5] "The pleader . . . must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *Lyde v. United Ins. Co. of America*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)).
[6] Because Plaintiff has not identified the physician involved in the alleged fraud, Plaintiff has not provided Defendants with adequate notice of his fraud claims. Accordingly, Plaintiff's fraud claims are barred by Rule 9(b) because Plaintiff fails to plead these fraud-based claims with the requisite particularity. *See United States ex rel. Clausen v. Laboratory Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"), *cert. denied*, 537 U.S. 1105 (2003); *Mixon v. Cason*, 622 So. 2d 918, 920 (Ala. 1993) ("The plaintiff did not plead with the specificity required by Rule 9(b)" and "the trial court properly dismissed"), *reh'g denied*, 639 So. 2d 961 (Ala. 1993).

### D. Employees Are Not "Sellers" And Thus Cannot Be Held Liable Under the AEMLD Claim.[7]

To the extent that Plaintiff asserts a products liability claim under AEMLD and strict liability (Count 1) against the professional representatives, there is no reasonable basis to predict that he can prevail on this claim because the AEMLD and strict liability applies only to "sellers" and "manufacturers" and the professional representatives are not "sellers" and "manufacturers" of the prescription medicine Vioxx. *See Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (to state a cause of action under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product"). Here the professional representatives have also submitted affirmative proof through their declarations that they are not "sellers" for purposes of Alabama law. *See* Declarations of professional representatives. Therefore, they cannot be held liable under the AEMLD. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286-87 (S.D.N.Y. 2001) ("The sales representative . . . neither manufactured, sold, nor supplied [the drug] . . . [but was] an agent of the manufacturer and seller. In light of the Alabama Supreme Court's clear explanation of AEMLD's scope and purpose, there is no

---

[7] Plaintiff has not contested the defendants' motions to dismiss as to this claim.

reasonable basis for supposing that it would impose liability on the sales representative in

this case."); *In re Baycol Prods. Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (discussing

liability of a professional representative under the AEMLD) (Attached as Exhibit I).

As set forth in the Notice of Removal in this case, the United States District Court

of Minnesota's decision in *In re Baycol Products Litgation*, MDL-1431 (D.C. Minn. Mar.

26, 2004), is particularly instructive. First, it serves as a reminder of the reasons why this

Court should defer a decision on remand to the Vioxx MDL Court, where this motion can

be heard along with motions to remand transferred from Alabama to the MDL with the

same fraudulent joinder issue. There, in each of the cases considered by the Baycol MDL

Court, the plaintiffs brought suit in Alabama state court concerning the plaintiffs' use of

the pharmaceutical Baycol. In addition to the manufacturer (Bayer), the plaintiffs also

sued several district managers and professional representatives. The cases were removed

to federal court on the basis that the non-diverse district managers and professional

representatives were fraudulently joined. The plaintiffs moved to remand the case,

raising the exact same arguments advanced by Plaintiff's counsel here. The district court

denied this motion and, as to the AEMLD claim, stated the following:

> Defendants argue that the district managers and sales professionals are not
> 'sellers' of Baycol, as contemplated by the AEMLD. The Court agrees.
> The purpose of the AEMLD, a judicially created doctrine, is to 'plac[e] the
> burden to compensate for loss incurred by defective products on the one
> best able to prevent the distribution of those products.' *Atkins v. American
> Motors Corp., et al.*, 3335 So. 2d 134, 139 (Ala. 1976). Although no
> Alabama state court decision specifically addresses whether a district
> manager or sales manager could be held liable under the AEMLD, other
> courts have found that Alabama would not impose such liability. For
> example, in an unpublished opinion from the Southern District of
> Alabama, the district court specifically held that a sales manager cannot be
> held liable under the AEMLD. *Bowman v. Coleman Company, Inc.*, Civil
> Action No. 96-0448-P-C (S.D. Ala. 1996), Attached as Ex. G to Removal
> Petition. The court recognized that the defendant sales manager 'had no

authority to compel or prevent the distribution of particular products . . .
for such product distribution decisions are vested in the [] home office,
rather than in its individual store managers.' Id. at *7. The court also
noted that it is the corporation that reaps the profits from the distribution
from products, and has the participatory market connection with the
manufacturer through which the corporation can recoup costs as a result of
seller liability, not the sales manager. 'In short, policy goals underlying
the AEMLD would not be advanced in any way by holding persons such
as Mr. Elkins liable in their role as store managers or sales professionals.'

*Id.* at 4-5.

Neither the language nor purpose of the AEMLD supports a claim for individual

liability under the doctrine. As such, Plaintiff has no possibility of recovering from the

individual professional representatives on this claim.

### E. Plaintiff's Warranty Claims Also Fail Because The Employees Are Not "Sellers."[8]

Plaintiff's breach of warranty claims (Counts V and VI) against the professional

representatives fail to state a claim for the same reasons as the AEMLD claim, *i.e.*, the

professional representatives are unquestionably not "sellers" or "manufacturers" of

Vioxx. *See Ala. Code* § § 7-2-313, 7-2-314, & 7-2-315 (both express and implied

warranty claims refer to the creation of warranties by the "seller"); *Ala. Code* § 7-2-

103(1)(d) (defining "seller" as "a person who sells or contracts to sell goods"); *see also*

*Wellcraft Marine v. Zarzour*, 577 So. 2d 414 (Ala. 1990) (noting that Alabama statutes

defining the warranties of merchantability and fitness for a particular purpose both apply

to the "seller"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286 (S.D.N.Y.

2001) ("The defendant professional representatives, however, were not 'sellers' of the

product for purposes of warranty; the 'seller' who impliedly warranted the

merchantability of Rezulin was the pharmaceutical manufacturer."); *In re Baycol Prods.*

---

[8] Plaintiff has not contested the defendants' motions to dismiss as to this claim.

*Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (concluding that warranty claims could not be asserted against pharmaceutical professional representatives because they were not "sellers" or "manufacturers" of Baycol).

Likewise, the UCC also is explicit on this point: its express and implied warranty provisions only apply to "sellers." *Ala. Code* § 7-2-313(1) ("Express warranties by the seller are created as follows . . ."); *id.* § 7-2-314(1) ("a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"). Moreover, under Alabama law, in order for an express or implied warranty to arise, there must be privity of contract between the buyer and seller. *See e.g.*, *State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.*, 505 So. 2d 1223, 1227 (Ala. 1987); *Weaver v. Dan Jones Ford, Inc.*, 679 So. 2d 1006, 1113 (Ala. Civ. App. 1996). There is clearly no privity between Plaintiff and the professional representatives. As the declarations show, the professional representatives never interacted with Plaintiff or sold Vioxx to him. *See* Declarations of professional representatives.[9]

### F. Alabama Law Does Not Hold Professional Representatives Individually Liable For Negligence Or Wantonness, And Such Claims Are Barred By The Learned Intermediary Doctrine.[10]

There is also no reasonable basis to predict that Plaintiff would prevail on his negligence and wantonness and negligence per se claims (Counts II and III) against the professional representatives. First, plaintiffs in products-liability cases may proceed on

---

[9] Moreover, any warranties would run not between these individual defendants and plaintiff, but rather between *the employer of these individuals* and plaintiff. *E.g., Hillburn v. Fletcher Oil Co.*, 495 So. 2d 613, 615 (Ala. 1986) ("Generally when an agent, acting within her real or apparent authority, enters a contract on behalf of her principal, only the principal is bound and subject to suit on the contract"). Finally, even if the professional representatives could have been parties to warranties under the UCC, the UCC would have required the Plaintiff to give these defendants notice of the breach of the warranty. *See* Ala. Code § 7-2-607; *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1103 (Ala. 1983) (notice is condition precedent to action for breach of warranty); *Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc.*, 365 So. 2d 968, 971 (Ala. 1978). Plaintiff gave no notice of the purported breach of warranty.

[10] Plaintiff has not contested the defendants' motions to dismiss as to this claim.

18

negligence and wantonness theories only against "manufacturers" and "sellers." *Ford Motor Co. v. Thomas*, 231 So. 2d 88, 92 (Ala. 1970); *accord Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965) (on a negligence theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article"). As discussed above, the professional representatives are not sellers or manufacturers of Vioxx. *See* Declarations of professional representatives. Second, the professional representatives cannot be individually liable under Alabama law for the alleged negligence or wantonness of Merck in manufacturing, selling, or warning of the alleged effects of Vioxx because no basis for individual liability has been pled. *See, e.g., Galactic Employer Servs. v. McDorman*, 880 So. 2d 434 (Ala. Civ. App. 2003) (noting that a corporate officer or employee must have direct, personal participation in the challenged corporate activity to be held personally liable for negligence).

Indeed, Plaintiff has not addressed the professional representatives' liability for negligence and wantonness or negligence per se in any legitimate way. While the negligence claim against the professional representatives is vaguely stated against "defendants" in the Complaint,[11] the only negligence and wantonness claim that could arguably relate to the professional representatives is that they "failed to adequately and properly warn Plaintiff purchasing Vioxx . . . ," Complaint at ¶ 53(d), (e)[12] – a claim that is barred by the learned intermediary doctrine, applied by the Alabama Supreme Court

---

[11] Vague allegations against "Defendants" are generally insufficient to justify remand. *See, e.g., Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (stating that there is "no better admission of fraudulent joinder" of the in-state defendants than plaintiff's failure "to set forth any specific factual allegations" against them). *See also Shah v. Wyeth Pharms., Inc.*, No. CV 04-8652 DT (MANx), slip op. at 7 (C.D. Cal. Jan. 18, 2005) ("[A]llegations against 'defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants") (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 391-92 (5th Cir. 2000).

[12] The declarations of the professional representatives establish that they did not take part in the testing or manufacturing of Vioxx and are undisputed in this regard.

since *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984). In *Stone*, the Alabama Supreme Court determined that "the adequacy of the accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous." *See Stone*, 447 So. 2d at 1304. The Alabama Supreme Court observed that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis the needs and background of the patient. Consequently, the court concluded that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer." *Id.; see also Morguson v. 3M Company*, 857 So. 2d 796, 801-02, n.1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warning are too complex to be fully appreciated by the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000)). Accordingly, Plaintiff's claims against the professional representatives for negligence and wantonness and negligence per se are barred by the learned intermediary doctrine.

### G. Plaintiff's Claims of Corporate Responsibility, Civil Conspiracy, and Unjust Enrichment Must Fail.[13]

Finally, Plaintiff has no reasonable basis to predict that he could recover on his claims of Unjust Enrichment (Count IV), Corporate Responsibility (Count VII), and Civil Conspiracy (Count VIII) against the professional representatives. First, Plaintiff's claim of corporate responsibility because of alleged joint ventures, parent/subsidiary, or successor relationships, is not directed toward the professional representatives, and thus, does not state a cause of action against them.

---

[13] Plaintiff has not contested the defendants' motions to dismiss as to this claim.

Second, Plaintiff's claim of civil conspiracy is not an independent cause of action. *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 550 (Ala. 1993). Rather, plaintiff must first present substantial evidence of an underlying actionable tort. *Willis v. Parker*, 814 So. 2d 857, 867 (Ala. 2001); *Keller v. Security Fed. Sav. & Loan Ass'n*, 550 So. 2d 151, 155 (Ala. 1989); *Wallace v. City of Montgomery*, 956 F. Supp. 965, 981 (M.D. Ala. 1996). Because Plaintiff cannot establish his underlying tort claims against the professional representatives, he cannot establish a cause of action for conspiracy against these defendants. *See Keller*, 555 So. 2d at 155-56.

Last, as shown above, because none of Plaintiff's independent claims establishes a cause of action against the professional representatives, Plaintiff's claim for unjust enrichment against them fails as well. The Alabama Supreme Court has held that "[t]the essence of the theories of unjust enrichment . . . is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Mitchell v. H&R Block, Inc.*, 783 So. 2d 812, 817 (Ala. 2000) (internal citation omitted). Given that Plaintiff cannot state claims against the non-diverse defendants, he has no claim against these defendants for unjust enrichment. In addition, Plaintiff has not alleged that the professional representatives "sold" Vioxx or ever collected money from the Plaintiff in exchange for Vioxx. To the contrary, the professional representatives specifically state that they did not "sell" Vioxx. *See* Declarations of professional representatives.

For all of the above reasons, there is no reasonable possibility Plaintiff can prevail on his claims against the professional representatives. The professional representatives

have been fraudulently joined in this action, and their citizenship is disregarded for purposes of assessing diversity jurisdiction. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

## III.     Prior Vioxx Cases Cited By Plaintiff Are Inapplicable To This Case.

In arguing for remand, Plaintiff cites five previous Vioxx cases from the Northern District of Alabama that have little applicability to this case.[14]  *See* Motion For Remand at 2-3. First, none of the decisions cited by the Plaintiff are binding on this court. *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court.").

Second, and most importantly, all of these cases were briefed on the remand issue prior to the *Legg* opinion. The *Legg* opinion supports Defendants' belief that the prior Vioxx Orders cited by Plaintiff in his Motion For Remand were decided incorrectly. After *Legg*, a court cannot find Plaintiff has a "reasonable possibility" of recovery in the absence of evidence rebutting the professional representatives' affidavits. *See Legg*,

---

[14] In addition Plaintiff attaches to his Motion for Remand, several cases involving defendant Wyeth in the diet-drug litigation from this district in an attempt to override the persuasive authority of the MDL Courts that have addressed the fraudulent joinder of Alabama professional representatives. Ex. D to Motion For Remand. The *Wyeth* cases are inapplicable here. It is important to note that in at least some of these cases, plaintiffs actually submitted affirmative evidence of reliance through the affidavit of the prescribing physician. *See, e.g., Cash v. Wyeth, et al*, U.S. District Court for the Northern District of Alabama, Civil Action No: 03-RRA-3378-E, attached to Motion For Remand Exhibit D. These cases are therefore distinguishable from the facts of the present case, where Plaintiff fails to refute either the legal arguments set forth in the Notice Of Removal or the declarations filed by the professional representatives. This is precisely the conclusion reached in the *Baycol* MDL when the *Wyeth* opinions were rushed before the Court; Judge Davis held that these decisions were distinguishable from the *Baycol* case and did not warrant the remand of cases involving the fraudulent joinder of professional representatives under Alabama law. *In re Baycol Prod. Liab.*, MDL 1431, slip opinion and Plaintiff's motion attaching the *Wyeth* cases as Ex. D. Finally, for the reasons set forth herein, Defendant maintains that these decisions were incorrectly decided in their ultimate holding that a "possible" claim might exist against professional representatives.

2005 WL 2756717 at *4-*5. The court cannot "resolve the facts in the plaintiff['s] favor based solely on the unsupported allegations in the plaintiff['s] complaint." *Id.* at *4.

In addition, one case relied on by Plaintiff, *William Cook v. Merck & Co., Inc.,* Civil Action No. 02-RRA-2710-S, is a case that is *presently pending* in the Vioxx MDL. *See* Motion to Remand Ex. D. Remand was ordered by Magistrate Judge Armstrong, but Merck had filed objections with the Article III judge when the case was transferred to the MDL. Consequently, the ultimate decision on remand in the *Cook* case will actually be made by Judge Fallon in the MDL. The only way to insure that the outcome of Plaintiff's remand motion is consistent with *Cook* – which Plaintiff purportedly desires – is for this Court to allow Judge Fallon to decide this and numerous other fraudulent joinder cases from Alabama in a coordinated manner.

Plaintiff also relies on Judge Acker's opinion in the case of *Hales v. Merck & Co., Inc.,* Civil Action No. 03-AR-1028-M, attached to the motion to remand as Ex. D. *See, e.g.,* Motion For Remand at 3. Plaintiff fails to realize that this decision was reached by Judge Acker *prior* to an MDL being established for Vioxx cases, and prior to its being evident that a significant number of Vioxx cases would be filed where plaintiffs sought to thwart diversity jurisdiction through their fraudulent joinder of professional representatives. At the time of Judge Acker's decision, there was little to no risk of inconsistent decisions regarding remand and no MDL judge who already had fraudulent joinder cases to decide under Alabama law. At present, there are several such cases before Judge Fallon, and, given the number of recent filings, there are likely more to come.

Moreover, *Hales* does not properly reflect the governing law.  First, the *Hales* court reasoned that unless the Alabama Supreme Court had addressed the precise factual circumstances (*i.e.*, a professional representative in a prescription medication case), there would still remain some possibility that plaintiff could state a claim.  *Hales* slip op. at 4. That is not the law.  Indeed, numerous federal courts in well-reasoned opinions have determined that employees like the professional representatives are not "sellers" for the purposes of the AEMLD, and that therefore those defendants were fraudulently joined. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 287-88; *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d at 138-39; *see also Bowman*, slip op. at 4, 8.  Those well-reasoned opinions should be followed.

Second, the actual holding in *Hales* is contrary to Eleventh Circuit law.  The *Hales* court granted remand because it believed it could not consider affidavits to determine whether the defendants were fraudulently joined.  *Hales*, slip op. at 6-7 (citing only its own prior unpublished opinion).  It is well established, however, that defendants "have the opportunity to submit affidavits, depositions, or other evidence to support removal."  *Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990), *superseded by statute on other grounds as stated in Shrader v. Legg Mason Wood Walker, Inc.*, 880 F. Supp. 366, 369 (E.D. Pa. 1995); *see also Lott v. Metropolitan Life Ins. Co.*, 849 F. Supp. 1451, 1452 (M.D. Ala. 1993) (Thompson, J.) ("A defendant may submit affidavits, depositions, or other evidence to support removal.").  In fact, the Eleventh Circuit addressed this precise issue definitively in *Legg* stating it is "entirely proper" for the court "to consider affidavits submitted by the defendants . . . in deciding . . . whether a possibility exists that Plaintiff[] ha[s] stated a . . . cause of action against

24

[defendants]." 2005 WL 2756717 at *5. Therefore, contrary to *Hales*, the Court is entitled to review the declarations of the professional representatives, which establish that Plaintiff cannot state a cause of action against them because none of them were "sellers" of Vioxx. *See supra.*[15] Further, in light of *Legg*, not only must the Court consider any evidence presented by the defendant, but if the Plaintiff fails to dispute that evidence, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." 2005 WL 2756717 at *4.

## CONCLUSION

For these reasons, as well as those stated in the Notice of Removal, Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding, and Defendants' Response to Plaintiff's Opposition to Motions to Dismiss, Defendant respectfully requests that the Court deny Plaintiff's request for expedited review, and issue a stay of proceedings that would allow the MDL Court to address Plaintiff's Motion For Remand. Alternatively, Plaintiff's Motion For Remand should be denied.

DATED this __14__ day of December, 2005.

Respectfully submitted,

_/s/ George R. Parker_
George R. Parker (PAR086)
One of the Attorneys for Defendant
Merck & Co., Inc.

---

[15] *Hales* also is inapposite because one of the four non-diverse defendants in that case failed to submit any affidavit. Here, by contrast, each non-diverse defendant has declared that he or she has never sold Vioxx to Plaintiff.

<u>OF COUNSEL</u>

BRADLEY ARANT ROSE & WHITE LLP
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail: gparker@bradleyarant.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that I have mailed by U.S. Postal Service this document to the following:

> Thomas J. Knight
> James S. Hubbard
> Hubbard & Knight
> 1125 Noble Street
> Anniston, Alabama 36201

> Steve Morris
> Post Office Box 814
> Wedowee, Alabama 36278

Respectfully submitted,

/s/ George R. Parker